JOHN A. WILLIAMS v. H. N. THOMAS,
and
HATCHER C. WILLIAMS v. H. N. THOMAS.

(Filed 31 May, 1941.)

1. Trial § 22b—

Upon motion for judgment as of nonsuit the evidence is to be taken in the light most favorable to plaintiff and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

2. Automobiles § 17—

The principal of *res ipsa loquitur* does not prevail in this State as to the skidding of an automobile.

3. Same: Automobiles § 18a—

Evidence tending to show that defendant's car was seen skidding on the highway on the right side thereof, but that just as plaintiff's car, traveling in the opposite direction on its right side of the highway, got almost parallel therewith, defendant's car suddenly whipped across the highway in front of plaintiff's car so that the front of plaintiff's car struck the rear of defendant's car, *is held* to show more than mere skidding and was sufficient to be submitted to the jury upon the issue of negligence. BARNHILL, J., dissents.

APPEAL by defendant from *Carr, J.,* and a jury, at November Term, 1940, of GRANVILLE. No error.

These were actions for actionable negligence, brought by plaintiffs against defendant, alleging damage. Defendant denied liability. By consent the two actions were consolidated for trial.

Hatcher C. Williams' testimony, in part, was as follows: "I am 21 years old; my home is at Oxford; have lived there all my life. I am the son of John A. Williams. On the 30th of August, I was on the highway between Burlington and Greensboro, I was in my father's car, and I was driving. I was going west toward Greensboro. Miss Jeanette Biggs, Mrs. J. H. Landrum and Miss Jacqueline Ray were with me.

"On that morning it was raining. The Southern Railway Company's underpass between Burlington and Greensboro is about five miles from Greensboro, east of Greensboro, in the direction of Burlington. Miss Ray was on the front seat with me, Miss Biggs and Mrs. Landrum were on the back seat. About 400 or 500 yards from the underpass east, in the direction of Burlington, we had a collision. Mr. H. N. Thomas was driving the car which we had the collision with. I was traveling west, towards Greensboro, Thomas was traveling east.

"On the 30th of August, the highway was macadamized, I believe, a hard surface road, the width was 33 feet. The highway was marked for

three lanes of traffic. I saw Mr. Thomas before the collision occurred; I did not know what kind of automobile he was operating at that time. When I first saw Thomas he was about 150 or 200 feet away from me, I estimated. The highway is straight behind there, but a curve in front of me, Thomas was on the curve. As I was traveling in the direction towards Greensboro, the curve curved to the right; it curved to Mr. Thomas' left.

"When I first saw Mr. Thomas I was going approximately 40 miles an hour, or 45, or something like that. That is the rate of speed at which I was going. I do not know the rate of speed Mr. Thomas was traveling when he approached me. I was driving on my right side of the highway; there was a shoulder on that highway; I was driving within a foot or so of the shoulder. I was keeping a careful lookout on the road in front of me. I came over a hill and as soon as I came over the hill, I saw Mr. Thomas. When I first looked I didn't realize he was skidding, then in maybe less than a second I saw he was skidding, and skidded on towards me. He was on his right side of the highway at the time, my left. He was about 150 feet away from me, I would say, approximately, when I was first able to tell he was skidding. At that time he was on his right side of the highway.

"After I saw Mr. Thomas was skidding I began to slow down and apply brakes. From the time I saw Mr. Thomas was skidding, the rear end of his car swung out toward the middle. He was still on the right, but the rear was getting toward the center, then 30 or 40 feet from me he whipped right across the road in front of me facing back towards Greensboro. When he was 30 or 40 feet away from me he whipped across the road in front of me. I was applying my brake but did not push them all the way when he came across. The front of my automobile collided with the rear of his, the collision occurred on my right side of the highway, right nearly on the shoulder. The shoulder at that time was muddy and slippery. It had been raining about 20 minutes or half an hour, hard, then started raining steady then. The shoulders were of dirt, mud, I believe, it was light red, in color."

He was corroborated by Miss Jacqueline Ray, who was riding on the front seat with him. She testified, in part: "When I first saw the automobile with which Hatcher's car collided, it was on my left side of the highway, his right. Hatcher's car was on the right side of the highway, it seemed to be pretty close to the shoulder. I couldn't say what kind of shoulders they were, I wasn't noticing the shoulders. I saw the automobile which was meeting Hatcher's car, it seemed to be skidding. When I first observed that it was skidding, Thomas' car was on his right side, it changed its course, he skidded a bit and then he turned completely, I mean, sideways in the road, in the middle of the road, that is all I remember. No, sir, I don't remember the collision."

The defendant introduced no evidence.

The judgment of the court below is as follows:

"The actions pending in the Superior Court of Granville County, entitled John A. Williams v. H. N. Thomas, and Hatcher C. Williams v. H. N. Thomas, coming on for trial, and being tried before the undersigned Judge presiding, and a jury, at the November Term, 1940, of the Superior Court of Granville County, and being, by consent of the parties, plaintiff and defendant, consolidated, the following issues were submitted to the jury, and the following answers to said issues returned by the jury:

"1. Was the plaintiff, John A. Williams, injured and damaged as the result of the defendant's negligence, as alleged in the complaint? Answer: 'Yes.'

"2. Did the plaintiff, John A. Williams, contribute to his injury through his own negligence? Answer: 'No.'

"3. What amount, if any, is plaintiff, John A. Williams, entitled to recover of the defendant? Answer: '$470.00.'

"4. Was the plaintiff, Hatcher Williams, injured and damaged as the result of the defendant's negligence, as alleged in the complaint? Answer: 'Yes.'

"5. Did the plaintiff, Hatcher Williams, contribute to his injury through his own negligence? Answer: 'No.'

"6. What amount, if any, is plaintiff, Hatcher Williams, entitled to recover of the defendant? Answer: '$150.00.'

"It is now, therefore, on motion of B. K. Lassiter, T. G. Stem and B. S. Royster, Jr., attorneys for the plaintiffs, Considered, Adjudged and Decreed that the plaintiff, John A. Williams, have and recover of the defendant the sum of $470.00, and his costs of this action; and that the plaintiff, Hatcher C. Williams, have and recover of the defendant the sum of $150.00 and his costs of said action, both amounts, namely, $470.00 and $150.00, to bear interest at the rate of six per centum per annum from and after November 11, 1940, to the first day of this term of Court. Leo Carr, Judge Presiding."

*B. S. Royster, Jr., Ben K. Lassiter, and T. G. Stem for plaintiffs.*
*Hedrick & Hall and Fred M. Parrish for defendant.*

CLARKSON, J. At the close of plaintiffs' evidence (the defendant introduced none), defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The court below overruled this motion, and in this we can see no error.

On motion to dismiss or judgment of nonsuit, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

WILLIAMS *v.* THOMAS.

The principle of *res ipsa loquitur* does not prevail in this State as to skidding.

In *Clodfelter v. Wells,* 212 N. C., 823 (827), *Devin, J.,* for the Court, said: "Coming back to the determinative question presented by the appeal, whether the doctrine of *res ipsa loquitur* applied to the facts in this case, it seems to have been definitely settled in North Carolina that this principle does not apply to the skidding of an automobile resulting in injury to a passenger. It was so held in *Springs v. Doll,* 197 N. C., 240, 148 S. E., 251, and reaffirmed in *Butner v. Whitlow,* 201 N. C., 749, 161 S. E., 389, and *Waller v. Hipp,* 208 N. C., 117, 179 S. E., 428."

The charge of the court does not appear in the record, and the presumption is that the court below charged the law applicable to the facts and that the case was not submitted to the jury on the theory of *res ipsa loquitur,* but on the grounds of negligence, irrespective of *res ipsa loquitur.*

Hatcher C. Williams testified: "After I saw Mr. Thomas was skidding, I began to slow down and apply the brakes. From the time I saw Mr. Thomas was skidding the rear end of his car swung out towards the middle. He was still on the right, but the rear was getting towards the center, then 30 or 40 feet from me he whipped right across the road in front of me, facing back towards Greensboro. When he was 30 or 40 feet away from me, he whipped across the road in front of me." It will be noted that this witness used the language "the rear end of his car swung out towards the middle," and the further language "but the rear was getting towards the center, then 30 or 40 feet from me, he *whipped* right across the road in front of me, facing back towards Greensboro. When he was 30 or 40 feet in front of me, he whipped across the road in front of me." Williams testified on cross-examination: "I do not think that Thomas' car stopped. I saw him cut across, then he just loomed up in front of me, then I saw the car skid across in front of me."

Miss Jacqueline Ray testified: "When I first observed that it was skidding, Thomas' car was on his right side, it changed its course; he skidded a bit and then he *turned completely; I mean sideways in the road,* in the middle of the road, that is all I remember."

The evidence above showed more than skidding, it was sufficient to be submitted to the jury on the aspect of negligence. The jury found that the injury to both person and property was caused by the negligence of defendant.

For the reasons given, we find in the judgment of the court below,

No error.

BARNHILL, J., dissents.