CARRIE M. ALLEN, ADMINISTRATRIX OF L. E. ALLEN, v. DR. PEPPER
BOTTLING COMPANY, INC., OF WASHINGTON, NORTH CAROLINA.

(Filed 28 April, 1943.)

**1. Automobiles § 14—**

Parking on a paved highway at night, without flares or other warning,
is negligence. Ch. 407, Public Laws 1937, secs. 97 and 123. C. S., 2621
(283), 2621 (308).

**2. Automobiles § 9a—**

Curves on the road and darkness are conditions a motorist is required
to take into consideration in regulating his speed "as may be necessary
to avoid colliding with any person, vehicle, or other conveyance." Sec.
105, ch. 407, Public Laws 1937, C. S., 2621 (290). He must operate his
automobile at night so as to be able to stop within the radius of his lights.

**3. Automobiles §§ 18c, 18g—**

In an action to recover damages from an automobile collision, where
defendant's truck was parked at night on the right side of a 22-foot paved
highway, in the middle of a four-tenths of a mile straight-away, with left
wheels two feet on the concrete and without parking lights on rear but
there were reflectors, and plaintiff's intestate, after applying his brakes
and leaving skid marks on the pavement for 100 to 190 feet, ran on the
right shoulder striking the truck on the right rear with such force that
he and a passenger were killed, the contributory negligence of plaintiff's
intestate was such that judgment of nonsuit sustained.

APPEAL by plaintiff from *Stevens, J.,* at September Term, 1942, of
PITT. Affirmed.

Civil action to recover damages for wrongful death resulting from
automobile-truck collision.

On the night of 24 December, 1940, defendant had two trucks travel-
ing on the highway from Plymouth to Washington. They were 1½ ton
trucks about 94 inches wide and 18 feet long loaded with crates of
"Dr. Pepper" and ginger ale. There was evidence that the rear truck
had been in a collision on Albemarle Sound bridge. The two trucks
stopped, apparently for repair, partly on and partly off the hard surface,
at a point between Plymouth and Washington near Acre Station. They
stopped with the left wheels about two feet on the pavement. The front
parking lights were burning. The evidence tends to show that the rear
lights were not on but there were reflectors. No flares were set. There
appeared to be a cable or chain between the two trucks which were about
25 or 30 feet apart.

When the trucks had been standing for about 15 to 30 minutes, at
about 7 p.m., it being dark, plaintiff's intestate approached from the
rear on a Ford V-8 going towards Washington. He ran into the rear
truck and was killed. One passenger was also killed and another injured.

There are two slight curves in the road, the straight-away being about four-tenths of a mile and the truck stopped about midway between the curves. The right of way had been cleared so that the curve formed no obstruction to view during the daytime. As the deceased rounded the curve on the Plymouth side he met another car. After he had entered the straight-away he cut slightly to the left and then back and applied his brakes which left skid marks on the pavement from 100 to 190 feet long. As he approached the rear truck he "dodged" to the right and ran on the shoulder of the road so that the left front of his car struck the rear right of the truck. The car was considerably damaged. As he approached the truck there was another car coming from towards Washington two or three hundred yards away.

The weather was fair, visibility was good, the trucks were tall and painted red and could have been seen easily by one keeping a careful lookout. So the witnesses for plaintiff testified.

At the conclusion of the evidence for the plaintiff, the court, on motion of the defendant, entered judgment of nonsuit and plaintiff appealed.

*W. L. Whitley and Blount & Taft for plaintiff, appellant.*
*J. B. James for defendant, appellee.*

BARNHILL, J. On this record evidence of negligence on the part of defendant must be conceded. Ch. 407, Public Laws 1937, sections 97 and 123. The nonsuit must be sustained, if at all, upon the contributory negligence of plaintiff's intestate.

As the deceased approached from the rear, rounding the curve, the beam of his lights was thrown to the left of the highway so that his vision along the pavement was restricted. He was going 50 miles per hour. He met another car on the curve and slowed to about 45 miles per hour. As he entered the straight-away he was still 200 to 300 yards from the parked truck. Apparently he did not see it at that time. When, however, he was within 50 to 75 yards he applied his brakes, locking the wheels so that they left skid marks on the pavement for a distance of 150 feet or more—"50 steps." Even then he was unable to stop his car before striking the truck with considerable force.

Curves on the road and darkness are conditions a motorist is required to take into consideration in regulating his speed "as may be necessary to avoid colliding with any person, vehicle, or other conveyance." Sec. 103, ch. 407, Public Laws 1937. He must operate his automobile at night in such manner and at such speed as will enable him to stop within the radius of his lights. *Weston v. R. R.,* 194 N. C., 210, 139 S. E., 237; *Smith v. Sink,* 211 N. C., 725, 192 S. E., 108; *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88; *Beck v. Hooks,* 218 N. C., 105, 10 S. E.

(2d), 608; *Sibbitt v. Transit Co.,* 220 N. C., 702, 18 S. E. (2d), 203; *Peoples v. Fulk,* 220 N. C., 635, 18 S. E. (2d), 147; *Dillon v. Winston-Salem,* 221 N. C., 512, 20 S. E. (2d), 845; *Pike v. Seymour,* 222 N. C., 42.

On all the evidence, considered in the light most favorable to the plaintiff, the road was straight for 200 to 300 yards. By the exercise of ordinary care deceased could have seen the parked truck. If he did not see, it was due to his own failure to keep a proper lookout. If he did see but was unable to stop, this must be attributed, in part at least, to his speed. In either event, his negligence was such as to bar recovery.

Reference has been made to the oncoming car. The testimony is that it was 200 or 300 yards down the road approaching at a moderate rate of speed. No one testified that it had bright lights or that its lights interfered with the vision of deceased. Granted that it was approaching. Still the fact remains that the pavement was 22 feet wide and only 2 feet thereof was occupied by the truck. This left ample space for two cars to pass in safety. Indeed, it is a matter of common knowledge that many of our improved roads are only 16 feet wide. Furthermore, none of this excuses his conduct in operating his vehicle at such a speed that he was unable to control it within the distance the record discloses was available to him.

It is true the passenger at one time, in his testimony, said they were within 50 or 75 feet of the truck when he saw it. He stated several times that it was 50 or 75 yards. It is evident that he said "feet" when he meant "yards," for he stated that the brakes were applied when they were 50 or 75 yards away and that the skid marks were 100 feet or more in length. Surely deceased did not apply his brakes in such manner before he saw any obstruction in the road. Even so, a failure to see before he was within 50 or 75 feet does not tend to exculpate him. *Pike v. Seymour, supra.*

The judgment of nonsuit was in accord with former decisions of this Court. It must be

Affirmed.