JOHN A. WINFIELD v. ROBERT JACKSON SMITH AND COLONIAL STORES, INC.

(Filed 11 May, 1949.)

**1. Trial § 22a—**

    On motion to nonsuit, the evidence supporting plaintiff's claim must be considered in the light most favorable for him, and he is entitled to every reasonable inference to be drawn therefrom.

**2. Automobiles § 18h (2)—**

Evidence tending to show that the driver of a truck was traveling 35 to 40 miles per hour in an early morning fog which limited visibility to 100 or 125 feet, that he had overtaken a vehicle traveling in the same direction and was attempting to pass such vehicle 250 or 300 feet before reaching a curve, and collided with plaintiff's car which approached from the opposite direction, *is held* sufficient to be submitted to the jury on the issue of the negligence of the driver of the truck. G.S. 20-141, G.S. 20-148, G.S. 20-150.

**3. Negligence § 19c—**

Nonsuit on the ground of contributory negligence is error unless this conclusion is the only reasonable inference that can be drawn from plaintiff's own evidence, taken in the light most favorable to him.

**4. Automobiles § 18h (3)—Driver striking vehicle blocking highway in attempting to pass third vehicle held not contributorily negligent as matter of law.**

Plaintiff's evidence was to the effect that a heavy fog limited visibility to 100 or 125 feet, that after rounding a curve and traveling some 100 feet he first saw defendant's truck approaching from the opposite direction when it was approximately 100 feet away and as it was in the act of passing another vehicle traveling in the same direction, that he immediately applied his brakes, that his tires skidded on the damp pavement, veering his car to the left, so that plaintiff's left front wheel was nineteen inches to his left of the center of the highway when he struck the side of defendant's tractor which had turned back to its right of the highway although the trailer still was blocking his lane of traffic, and that under the circumstances plaintiff did not have time to turn his car back to the right and, because of the fog, could not see to drive on the shoulder or in the ditch to his right if he had had room or time to do so. *Held:* Defendants' motion to nonsuit on the ground of contributory negligence was properly denied, defendants' evidence in conflict with that of plaintiff being ignored.

**5. Trial § 22b—**

On motion to nonsuit, defendants' evidence will not be considered except when not in conflict with that of plaintiff; it may be used to explain or make clear that of plaintiff.

**6. Automobiles § 8g—**

The mere fact of the skidding of an automobile, without other evidence, does not necessarily impute negligence to the driver.

**7. Automobiles § 8j—**

Where a sudden emergency is created by defendants' negligence, plaintiff will not be held to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made.

**8. Automobiles § 18g (5)—**

Physical evidence at the scene of the accident in suit *held* not such as to necessarily negative plaintiff's testimony as to speed.

**9. Automobiles § 12a—**

Driving at a speed of 30 to 35 miles per hour in a heavy fog limiting visibility to 100 or 125 feet does not compel the conclusion that the driver was exceeding the speed at which he could stop within the range of his visibility.

STACY, C. J., took no part in the consideration or decision of this case.

WINBORNE, J., dissenting.

BARNHILL, J., concurs in dissent.

APPEAL by defendants from *McSwain, Special Judge,* September Term, 1948, of WAKE. No error.

This was an action to recover damages for personal injury sustained as result of collision between an automobile plaintiff was driving and a truck of defendant Colonial Stores, Inc., being driven by defendant Smith. It was alleged that plaintiff's injury was caused by the negligence of defendant Smith who was at the time acting in the scope of his employment by the corporate defendant.

The collision occurred about 6:10 a.m., 18 June, 1947, on State Highway 70, six miles west of Smithfield. Plaintiff was driving a Chevrolet passenger automobile in an easterly direction and defendants' motor tractor-trailer truck was being operated in the opposite direction. At the locality of the collision the road was straight, though there was a curve west of this point 250 or 300 feet distant. The road was surfaced with asphalt pavement 18 feet wide with dirt shoulders 4½ feet wide on each side. At the time of the collision the scene was enveloped in a heavy fog, denser near the ground, and the surface of the asphalt was damp due to moisture condensed from the fog.

The plaintiff testified his automobile was in good condition, recently inspected, and brakes adjusted, and that he was driving at speed of 30 to 35 miles per hour on his right side of the road with his parking or fog lights turned on. Due to the fog, visibility was reduced to 100 to 125 feet. After he came around the curve he saw at a distance of 100 feet away the defendant's truck approaching at a speed of 35 to 45 miles per hour, and in the act of attempting to pass the automobile of T. H. Underwood proceeding in same direction (west), so that the truck occupied the south or plaintiff's right-hand lane of the highway. The front of the truck was just even with the front of the Underwood car, blocking the road. Confronted with this emergency plaintiff immediately applied his brakes, and his automobile continued in same direction about 6 feet

and then skidded slightly to the left. In the meantime the driver of defendant's truck apparently becoming aware of plaintiff's automobile at about the same time had turned to his right, and Underwood also had quickly turned to his right off the road and stopped. The tractor portion of defendant's vehicle had crossed the center line of the highway to its right side, leaving the trailer still on the left or southern traffic lane, at the instant plaintiff's automobile collided with defendant's truck, the left front of plaintiff's automobile striking the left side of defendant's tractor or between tractor and trailer. Plaintiff sustained serious injury.

Plaintiff testified there were lights on the Underwood car, but he saw none on the truck; that due to the fog he could see only 100 to 125 feet in front and for that reason was driving carefully at a moderate rate of speed; that due to the unchecked speed of the truck as the vehicles approached each other he calculated only a brief space of time elapsed from the instant he saw the truck loom out of the fog 100 feet in front of him until the impact—a "split second" as he termed it; that he had no reason to anticipate the approach of a truck traveling on his right or southern side of the highway; that the truck approached so quickly and the collision so imminent he could not turn his automobile to the right and due to the fog he could not see off on the shoulder or the ditch, and that he applied his brakes and held his course. He testified he did not at any time turn his automobile to the left side of the road; that the marks on the pavement showed his rear wheels skidded and the left front wheel was 19 inches over the center line; that if he had not collided with the front portion of the tractor he would have struck the trailer which was in plaintiff's lane of traffic. He offered evidence to show that defendant's tractor-trailer was 40 feet long, 8 feet wide and the trailer 12 feet high. He testified, "it was split second timing in there from the time I saw this truck. When the car started skidding I had my hands on the wheel. It might have been that the brake on the left wheel applied a little harder than on the right, and that pulled the car that way. I guess I could have turned to my right if I had enough time; I don't know about that. Evidently I didn't have enough time to turn it back in the split second of time I had. The car skidded. . . . When I threw the brakes, the minute the impulse was made to put the brakes on, the car skidded." He testified if he had turned into the ditch it might have been much worse—"you couldn't see." The defendant Smith, driver of defendant's truck, testified that plaintiff applied his brakes and skidded over to his left side of the road, and that he saw the marks where he skidded. It was also in evidence that Smith said when he was abreast the Underwood car he saw the lights on plaintiff's automobile as he came around the curve; that he himself was traveling 35 to 40 miles per hour, and when he

saw plaintiff's car he "speeded up a little." Underwood testified that at the time of the collision the truck had slowed up and was gradually coming to a stop. The patrolman who was offered as a witness by the defendants testified the only tire mark left by the truck was a slight dragging at the point of impact.

The defendants offered evidence tending to show that plaintiff's automobile struck the truck two feet over the center line; that the marks of plaintiff's tires gradually veered to his left; that from the point they started to the point of impact was 90 feet; that skid marks were straight down the highway on his right side for approximately 12 to 15 feet; then it was a sidewise skid leading to point of impact with all four tires making an impression; that at the beginning it was not sidewise, but as it got to about the center of the road it began sidewise sliding off toward the side. "The sidewise marks went in the neighborhood of 75 or 78 feet before the point of impact"; that at the time of collision the tractor was entirely on its right side of the road, and only the rear end of the trailer was in the left or southern lane of traffic, occupying some 4 or 5 feet of that lane, and that there was room for an automobile to pass by using a portion of the shoulder. Defendant Smith testified he could see 300 feet. Underwood testified he could see only 100 to 125 feet, that it was very foggy making it difficult to drive. He said while there was room for a car to have passed on the shoulder on the right, if the driver "could have seen where he was going. The fog was keeping him from seeing. I couldn't see." . . . "I got off the highway. It was quick work." He said if the plaintiff had kept straight on down the highway he would have hit the trailer. Plaintiff testified: "I skidded nothing like as much as 90 feet. I didn't travel that far between the time I saw the car and this happened. From the time I applied my brakes and went 3 or 4 or 5 feet straight and then started skidding to the left, I won't say it was over 10 feet altogether. The whole business wasn't over 10 feet. I didn't see a skid mark there approximately 90 feet." Defendant Smith, the driver of the truck, did not testify to the rate of speed of plaintiff's automobile other than to call it "a pretty good rate of speed."

Defendants' motion for judgment of nonsuit was denied, and their prayers for peremptory instructions were refused. The jury answered the issues as to negligence and contributory negligence in favor of the plaintiff and awarded damages in sum of $4,000. From judgment on the verdict defendants appealed.

*J. M. Broughton and C. Woodrow Teague for plaintiff, appellee.*
*Ehringhaus & Ehringhaus for defendants, appellants.*

DEVIN, J.  The question chiefly debated on the defendants' appeal in this Court was the correctness of the ruling below denying the defendants' motion for judgment of nonsuit.  While not conceding evidence of actionable negligence on the part of defendants, it was urged that from the plaintiff's evidence it necessarily followed as a matter of law that he was chargeable with contributory negligence, barring recovery.

Keeping in mind the established rule that on the motion for nonsuit the evidence tending to support the plaintiff's position must be considered in the light most favorable for him, and that he is entitled to the benefit of every reasonable inference to be drawn therefrom (*Nash v. Royster,* 189 N.C. 408, 127 S.E. 356), we think there was evidence of negligence on the part of the driver of defendants' truck, in that he drove on his left side of the road in attempting to pass another motor vehicle proceeding in the same direction at a time when he was within 300 feet of a curve, his vision obscured by a heavy fog, at a speed of 35 to 40 miles per hour, and meeting an oncoming automobile traveling in the lane of traffic into which he had thus driven his truck.  Plaintiff's evidence would seem to indicate not only failure on defendants' part to observe the rule of the prudent man under the circumstances, but also to show violation of several provisions of the statutes regulating the operation of motor vehicles on the highway.  G.S. 20-141 (c); G.S. 20-148; G.S. 20-150. Accordingly evidence of such improper and unlawful conduct, proximately resulting in injury to the plaintiff, warranted submission to the jury of the issue of defendants' negligence.  *Joyner v. Dail,* 210 N.C. 663, 188 S.E. 209; *Tarrant v. Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565; *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740.

The defendants both by their motion to nonsuit and by prayers for peremptory instructions to the jury present the question whether from the evidence of the plaintiff there was such a showing of contributory negligence on his part as to preclude recovery.  For the determination of the question thus raised the rule is that judgment of nonsuit on the ground of contributory negligence should not be granted "unless the plaintiff's evidence, taken in the light most favorable to him, so clearly establishes such negligence that no other reasonable inference or conclusion can be drawn therefrom."  *Dawson v. Transportation Co., ante,* 36. And in the consideration of this motion the court "must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by the plaintiff." *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.  To justify the allowance of the defendants' motion on this ground contributory negligence must be established by plaintiff's evidence so clearly that no other conclusion seems permissible.  *Atkins v. Transportation Co.,* 224 N.C. 688,

32 S.E. 2d 209. "As the burden of proof upon the issue of contributory negligence. was upon defendants, it is the settled rule in this jurisdiction that judgment of nonsuit on this ground can be rendered only when a single inference, leading to that conclusion, can be drawn from the evidence." *Hampton v. Hawkins,* 219 N.C. 205, 13 S.E. 2d 227; *Hobbs ·v. Drewer,* 226 N.C. 146, 37 S.E. 2d 121; *Cole v. Koonce,* 214 N.C. 188, 198 S.E. 637; *Manheim v. Taxi Corp.,* 214 N.C. 689, 200 S.E. 382.

Examining the evidence in this case in the light of these principles, we find this factual situation: According to plaintiff's testimony, on an early morning in June he was driving an automobile east along the highway at a speed of 30 to 35 miles per hour, a fog limiting his vision to 100 to 125 feet, when suddenly there loomed out of the fog the bulk of a large tractor-trailer bearing down on him in his or south lane of traffic at a distance of 100 feet. As the width of the pavement was only 18 feet, and the truck, 8 feet wide, was in the act of passing another automobile proceeding in same direction, the entire roadway was blocked, and the truck was traveling toward him at the rate of 35 to 40 miles per hour. As the plaintiff expressed it, this sudden emergency required "split-second" action. He immediately applied his brakes and kept his course. *Guthrie v. Gocking,* 214 N.C. 513, 199 S.E. 707. But the surface of the asphalt pavement was moist as result of the fog, and the application of brakes caused the tires to skid and the automobile after moving forward 6 feet veered slightly to the left, so that the left front wheel was 19 inches over the center line of the road when it struck defendants' tractor which had been pulled to the right, leaving the trailer still in the south lane of traffic. Under circumstances requiring instant action, according to his testimony, plaintiff did not turn his automobile to the left, and did not have time to turn it back to the right; could not, on account of the fog which was denser near the ground, see to drive on the shoulder or in the ditch on his right if he had had room or time to do so. He testified if he had not skidded but gone straight he might have missed the tractor but would have hit the trailer.

On the other hand the defendants call attention to the admitted fact that the collision occurred 19 inches over the plaintiff's left side of the center of the road, and it is argued that according to plaintiff's statement there is the reasonable inference to be drawn therefrom that he could and should have controlled the movement of his automobile and turned it back to the right in time to have avoided the collision. The defendants further call attention to the testimony of the highway patrolman as to the tire marks he observed on the highway tending to show that the brakes on plaintiff's automobile were applied 90 feet from the point of impact, and that after moving straight 12 to 15 feet, the tires slipped or skidded

sidewise for 75 or 78 feet to the collision, 2 feet over the center line of the road. The defendants deduce from this that plaintiff was driving at so high a speed that he could not control his automobile, and that under the circumstances of fog and moist pavement his speed showed a total disregard for the requirements of ordinary prudence, was under the circumstances negligent, and constituted a proximate contributing cause to his injury. However, the evidence of the patrolman was offered by the defendants and was not admitted by the plaintiff, and may not be considered on the motion to nonsuit. The credibility of the witness was a matter for the jury. The rule as stated by *Chief Justice Stacy* in *Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598, is that in considering the motion for nonsuit "the defendant's evidence, unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with the plaintiff's evidence, it may be used to explain or make clear that which has been offered by the plaintiff." *Gregory v. Ins. Co.,* 223 N.C. 124, 25 S.E. 2d 398; *Bundy v. Powell, supra.* The plaintiff testified the truck was only 100 feet away when he was first able to see it, and that it was approaching on his side of the road at 35 to 40 miles per hour. He points out that according to the testimony the driver of defendants' truck first slightly accelerated his speed, then slackened, so that though plaintiff applied his brakes and materially reduced his speed, not much more than a few seconds could have elapsed before the truck traversed the remaining portion of the space of 100 feet that on first view separated the meeting vehicles, and that if the plaintiff's evidence be accepted with all permissible inferences in his favor, his automobile could not have skidded 90 feet, or 75 feet sidewise, in the direction of the rapidly approaching truck within the time and space shown by plaintiff's testimony. Moreover, plaintiff testified to the contrary. He denied that he skidded anything like 90 feet. He said that when he applied his brakes he went straight 3 or 4 or 5 feet, and then skidded to the left, and that the entire distance covered was not more than 10 feet. He declared he did not turn his automobile to the left. It may be that plaintiff was mistaken, and that the distance between the vehicles was much greater than that stated by him; or he was traveling much faster than the limit he fixed. Here was a conflict in the testimony which the court properly submitted to the triers of the fact. Conflicting testimony necessitates trial by jury. *Stallings v. Ins. Co., ante,* 304; *Lavender v. Kurn,* 327 U.S. 645 (653). The mere fact of the skidding of plaintiff's automobile without other evidence of fault on his part, would not necessarily impute negligence to the driver. *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251; *Butner v. Whitlow,* 201 N.C. 749, 161 S.E. 389; *Waller v. Hipp,* 208 N.C. 117, 179 S.E. 428; *Clodfelter v. Wells,* 212 N.C. 823, 195 S.E. 11; *Williams*

*v. Thomas,* 219 N.C. 727, 14 S.E. 2d 797; *Hoke v. Greyhound Corp.,* 227 N.C. 412 (420), 42 S.E. 2d 593. The circumstances here were materially different from those appearing in· *York v. York,* 212 N.C. 695, 194 S.E. 486. In judging plaintiff's conduct on this occasion consideration must be given to the sudden emergency with which, according to his testimony, he was confronted, and he should not be "held to the same deliberation or circumspect care as in ordinary conditions." *Hinton v.· R. R.,* 172 N.C. 587, 90 S.E. 756. The standard of conduct is that of the prudent man under like circumstances. According to plaintiff's testimony the emergency was created by the negligent conduct of the defendants. Under these circumstances the rule is stated in *Ingle v. Cassady,* 208 N.C. 497, 181 S.E. 562, as follows: "One who is required to act in emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made." *Hoke v. Greyhound Corp., supra; Butner ·v. Spease,* 217 N.C. 82, 6 S.E. 2d 808; *Beck v. Hooks,* 218 N.C. 105, 10 S.E. 2d 608; *Sparks v. Willis,* 228 N.C. 25, 44 S.E. 2d 343.

We do not think the plaintiff's own testimony "proves him out of court" (*Hayes v. Tel. Co.,* 211 N.C. 192, 189 S.E. 499; *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137), nor are there indisputable physical facts which necessarily negative his oral evidence. *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88; *Wallace v. Longest,* 226 N.C. 161, 37 S.E. 2d 112. Driving at 30 to 35 miles per hour, with objects on or moving along the highway visible for 100 to 125 feet, would not seem to compel the conclusion that he was driving faster than his ability to stop within that distance. *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Allen v. Bottling Co.,* 223 N.C. 118, 25 S.E. 2d 388; *Caulder v. Gresham,* 224 N.C. 402, 30 S.E. 2d 312.

After careful consideration of the record in the case at bar, in relation to the defendants' motion, we cannot hold as a matter of law that on the evidence presented by the plaintiff his conduct on this occasion, under the circumstances as detailed by him, fell below the required standard of reasonable care and prudence, nor do we think on this· evidence contributory negligence has been so clearly established that no other reasonable inference can be drawn therefrom. The issue of contributory negligence was for the jury rather than the court, and there was no error in refusing the peremptory instruction prayed for.

The defendants noted numerous exceptions to the judge's charge, but upon an examination of the charge as a whole we think the trial judge stated the principles of law applicable to the determinative issues in substantial accord with well considered decisions of this Court, and we are unable to find error therein, or in the rulings on the reception of testimony, which would warrant awarding another hearing. The jury

has determined the facts in favor of the plaintiff, and the result will not be disturbed.

In the trial we find

No error.

STACY, C. J., took no part in the consideration or decision of this case.

WINBORNE, J., dissenting: I am unable to agree that error prejudicial to defendants is not made to appear in the record on this appeal, particularly the exceptions (1) to denial of motions for judgment as in case of nonsuit and for directed verdict on the issue of contributory negligence, and (2) to admission of evidence to which Exception 1 relates.

In the first place, the evidence, even the testimony of plaintiff himself, as I read it, shows unmistakably that he was contributorily negligent in respect to the injury of which he complains, that is, that plaintiff was negligent and that his negligence was a proximate cause of his injury. *Bus Co. v. Products Co.*, 229 N.C. 352, 49 S.E. 2d 623; *Tyson v. Ford*, 228 N.C. 778, 47 S.E. 2d 251; *Riggs v. Oil Corp.*, 228 N.C. 774, 47 S.E. 2d 254; *McKinnon v. Motor Lines*, 228 N.C. 132, 44 S.E. 2d 735; *Austin v. Overton*, 222 N.C. 89, 21 S.E. 2d 887.

All the evidence shows that the collision between plaintiff's automobile and the tractor of the corporate defendant's tractor-trailer-truck actually occurred on plaintiff's left, and on defendant's right side of the center line of the road. This constitutes a violation by plaintiff of the statute, G.S. 20-148, requiring that "Drivers of vehicles proceeding in opposite direction shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible." And all the evidence shows that the point of impact between the two vehicles was on the front of plaintiff's automobile and the front of the tractor of defendant's tractor-trailer-truck. Plaintiff testified, "The front part of the truck which I struck and which was in collision with me was 19 inches across the center line." P. 28 of the record. And again he says, "The actual parts of the two cars when they came together collided on 19 inches across from my side of the road." P. 28. And plaintiff's witness Underwood testified: "At the time of the collision the tractor part was on the right side of the line. I mean . . . of the white line of the highway." P. 46 of the record. And again he says: "Mr. Winfield didn't hit the trailer. The part that Mr. Winfield hit of the truck and tractor was the front of the tractor or truck, and that was on its right side of the road,—well over to the right. As he was on the right side of the road when the collision occurred, the wheel on Mr. Winfield's car that struck was on the left side of that center line." And plaintiff says further in his testimony, "When the car started skidding, I of course

had my hands on the wheel. It might have been that the brakes of the left wheel applied just a little harder than it did on the right, and that pulled the car that way. I guess I could have turned it back to my right." P. 34. To fail to turn to the right when plaintiff could and should have so turned, was negligence on his part which necessarily contributed to the injury. This is plaintiff's own estimate of the situation. If he says he could have turned to the right, how can we say it was not his duty to do so?

Moreover, plaintiff's own testimony is full of evidence of his violation of the statute G.S. 20-141 as to speed restrictions. That statute provides that "No person shall drive a vehicle on a highway at a speed that is greater than is reasonable and prudent under conditions then existing." And while this statute further provides that "Where no special hazard exists" certain speed limits shall be lawful, it provides that "the fact that the speed of a vehicle is lower than the foregoing *prima facie* limits does not relieve the driver of the duty to decrease speed . . . when special hazard exists with respect to . . . or by reason of weather or highway conditions . . ." And the statute further provides that "It shall be unlawful to violate any provision of this section . . ."

All the evidence shows that weather and road conditions at the time of and immediately before the collision constituted a special hazard. Plaintiff's evidence describes the condition of the road and of the weather. Plaintiff testified: "The pavement was slightly damp as result of the fog . . . the top of the black asphalt was damp just a little." Record P. 18. The plaintiff's witness Underwood testified: "I think the pavement was very damp from the fog." P. 47. Moreover, as to the fog, plaintiff testified, "The fog at that particular point immediately before the collision was as heavy as I ever remember traveling in . . . As I approached this point where the collision occurred the fog was very heavy." P. 18. And again plaintiff testified: "I would say I could see approximately 100 feet in front of me above 6 feet . . . I'd say I could see where I was around 100 feet. The fog was heavy above the 6-foot line but exceptionally heavy down near the ground . . ." P. 25. "The fog kept me from seeing very far." P. 26.

Then the record shows these questions and answers:

"Q. How far could you see ahead?

"A. You mean at the time the accident happened?

"Q. Just before the accident?

"A. You couldn't see over 20 feet. There were spots down the road where the fog was heavy in one spot.

"Q. You could see 125 feet away?

"A. I would say that was the maximum." P. 26.

· And, continuing, "I would say that the particular stretch of road I hadn't been driving under those conditions more than 600 or 700 feet or possibly 1,000 feet. The fog happened to be heavier than at other spots." P. 26.

And plaintiff's witness Underwood testified: "As I drove along Highway #70, approaching the place where this automobile collision occurred the weather was very foggy. It was foggy to the extent of making it difficult to drive. I spoke of it to the man that was with me." P. 45.

Under these conditions plaintiff testified: "I was driving my car between 30 and 35 miles an hour immediately before this impact." P. 18. And again plaintiff says: "My highest estimate would not exceed 35 miles an hour." P. 25. And, again, "My speed that morning from Raleigh on was about 35 miles an hour." P. 26.

At the rate of 30 miles per hour, plaintiff would have been traveling 44 feet per second. And at 35 miles per hour, he would have traveled approximately 51 feet per second.

And it is significant to note that the collision did not occur at or on a curve. Plaintiff himself says, "I came around a slight curve to my right, but that curve was 250 or 300 feet from where this accident occurred." P. 18. "I was 200 feet beyond the curve before I saw this truck. The truck was approximately 100 feet in front of me when I saw it." P. 25.

And this further testimony of plaintiff is significant of negligence on his part,—contributing to his injury. He testified, "When I saw this truck first . . . I immediately applied the brakes to the Chevrolet . . ." P. 19. And, again, "From the time I applied my brakes and went 3 or 4 or 5 feet straight and then started skidding to the left, I won't say it was over 10 feet altogether. The whole business was not over 10 feet." P. 31.

This testimony means either one of two things. If plaintiff applied his brakes as he said he did, the truck could not have been 100 feet away when he saw it, and he was outrunning his lights. If, on the other hand, the truck was 100 feet away when plaintiff saw it, it is manifest that he delayed too long in applying the brakes, for he says he only skidded 10 feet. Thus taking either horn of the dilemma, he proves himself to be contributorily negligent.

For these reasons it is obvious on the record that one of the proximate causes of the injury to plaintiff was his own negligence, either in driving at excessive speed and recklessly under the conditions existing or in steering his car in the wrong direction, or in both respects.

And, in the second place, there is error in admission of evidence to which Exception 1 relates. Plaintiff was permitted, over objection by corporate defendant, to testify that "As soon as I came to Mr. Underwood

and Mr. Smith were at my car and I remember they wanted to help me and the first words I remember was Mr. Smith telling me not to worry about the situation that they expected to take care of it." This admission of this statement is manifestly error, and of the most prejudicial character.

"It is the rule with us that what an agent or employee says relative to an act presently being done by him within the scope of his agency or employment, is admissible as a part of the *res gestæ,* and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer." *Hubbard v. R. R.,* 203 N.C. 675, 166 S.E. 802.

Indeed, as stated by Stansbury on N. C. Evidence, Sec. 169, page 365, "It is often said that a statement accompanying an act is admissible either for or against the principal, but this would seem to be true only when the statement characterizes or qualifies the act."

Moreover, "In the absence of express orders to do an act, in order to render the master liable, the act must not only be one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment." See *Parrish v. Mfg. Co.,* 211 N.C. 7, 188 S.E. 817.

My vote is for a nonsuit. Failing in this, I vote for a new trial.

BARNHILL, J., concurs in dissent.