SHELTON M. DOWDY v. SOUTHERN RAILWAY COMPANY, INC., J. W. MOORE AND W. A. INGOLD,

and

BOBBY BURNS, INC., AND HARFORD MUTUAL INSURANCE COMPANY v. SOUTHERN RAILWAY COMPANY, INC., J. W. MOORE AND W. A. INGOLD.

(Filed 15 April, 1953.)

**1. Appeal and Error § 29—**

Assignments of error not brought forward in appellant's brief are deemed abandoned. Rule of Practice in the Supreme Court 28.

**2. Railroads § 4—**

The negligence of the driver of a vehicle in driving it upon a railroad track in the face of an oncoming train which he could have seen in the exercise of ordinary care for a distance of some 900 yards during the last 25 or 30 feet before reaching the track if he had looked in the direction from which the train was approaching, constitutes contributory negligence barring recovery for the crossing accident notwithstanding that the railroad company may have been guilty of negligence, unless the doctrine of last clear chance applies.

**3. Same—**

A traveler approaching a public crossing has a right to expect timely warning of approaching train, but failure to give such warning will not justify him in assuming no train is approaching. He still has a duty to keep a proper lookout.

**4. Same: Automobiles § 25½—**

If the driver is an employee, and at the time of the accident is acting within the scope of his employment in operating the employer's motor vehicle, the driver's contributory negligence will be attributed to the employer, barring the employer's right to recover against a third person for damage to his vehicle.

**5. Subrogation § 1—**

Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.

**6. Subrogation § 2: Insurance § 43e—**

An insurance company paying damages sustained to the vehicle resulting from a crossing accident cannot acquire by subrogation any better right as against the railroad company than that of insured, and where the driver's contributory negligence bars insured it also bars insurer.

**7. Negligence § 10—**

The doctrine of last clear chance does not arise unless it appears that the injured party has been guilty of contributory negligence, and does not apply when the injured party is guilty of contributory negligence as a matter of law.

**8. Evidence § 5—**

Courts take judicial notice of subjects and facts of general knowledge.

**9. Same—**

The courts will take judicial notice that the engineer's seat is on the right side of the locomotive and the fireman's on the left.

**10. Railroads § 4: Negligence § 10—Evidence held insufficient to support application of doctrine of last clear chance.**

Plaintiffs' evidence tended to show that for a distance of some 25 or 30 feet before plaintiff driver reached defendant's railroad crossing a person could see down the track in the direction from which defendant's train approached a distance of some 900 yards, that the accident occurred in the daytime in clear weather, that the driver did not look to his right, from whence the train was approaching, until his tractor was on the tracks, when he saw the train approaching some 300 to 400 feet away at a speed of 12 to 15 miles per hour, that he threw his tractor into reverse, that the tractor started backward and then stalled on the tracks, and that the locomotive struck the tractor causing personal injury to the driver and damage to the vehicle. The evidence further tended to show that the driver was on the fireman's side of the locomotive, that the fireman warned the engineer of the danger, and that the engineer immediately applied the brakes, and that the train stopped about 150 feet after the impact. *Held:* Considering the evidence in the light most favorable to the plaintiffs it fails to show that by the exercise of reasonable care defendants saw or should have seen the vehicle on the tracks in an apparently helpless condition in time to have stopped the train and avoided the collision, and therefore the doctrine of last clear chance does not apply.

Johnson, J., dissenting.

Appeal by plaintiffs from *Sharp, Special J.,* and a jury, September Civil Term 1952. Lee.

The plaintiff Shelton M. Dowdy seeks to recover damages for personal injuries caused by the alleged actionable negligence of the defendants, the Southern Railway Co., J. W. Moore, the locomotive engineer, and W. A. Ingold, the fireman, in a crossing collision between a tractor and oil tanker driven by the plaintiff and a train of the railway company.

The plaintiff Bobby Burns, Inc., owner of the tractor and oil tanker, and the plaintiff Harford Mutual Insurance Co., insurance carrier, who has paid part of the damage to the tractor and oil tanker, seek to recover damages to the tractor and oil tanker caused by the alleged actionable negligence of the defendants in the crossing collision.

Bobby Burns, Inc., and the Insurance Company filed a joint complaint. The two cases were consolidated for trial.

For the sake of terseness the plaintiffs Shelton M. Dowdy will be referred to as Dowdy; Bobby Burns, Inc., as Burns; and the Harford Mutual Insurance Company as the Insurance Company: the defendants Southern Railway Co., as the Railway Co.; J. W. Moore as Moore, and W. A. Ingold as Ingold.

This in substance is a summary of the evidence offered by the plaintiffs in the trial below.

Dowdy testified in substance. On 7 March, 1951, Dowdy, an employee of Burns, a transport hauler of gas, was hauling gas by tractor and oil tanker, for Burns to the Gulf Bulk Plant in Mount Airy. He had a load of 5,050 gallons of gas. About 9:35 a.m. on this day he turned left off Highway No. 601, went down the road parallel with the Railway Co.'s tracks 400 to 600 yards, then turned left, and crossed the railroad tracks into the Gulf Plant. The track was straight about 900 yards west of the crossing and about the same distance to the east. Dowdy drove to the north side of the Gulf Plant, made a complete circle, and headed back out the gate. The Gulf Plant has a fence around it, and the fence is approximately 25 or 30 feet from the railroad track. There were vines and rosebushes on the fence on each side of the gate. On the right of the gate as one enters, the plant is located; on the left a garage. A tank car was on the sidetrack on Dowdy's right as he drove in the yard. Dowdy testified on direct examination: "As I headed back out to the gate, I looked first to the left, then I looked back to the right. The gate of the Gulf Plant is approximately 25 or 30 feet from the railroad tracks. By the time I looked to the right my tractor was upon the tracks. I then saw the train coming. At that time the train was approximately 300 to 400 feet away. I throwed my tractor in reverse, let out on my clutch right quick, and my tractor choked down. At that time my pulling wheels were on the South side of the track. When I throwed it in reverse, my tractor started backward, and stalled on the track. It moved backward some. I tried to start it to clear the track, but could not start it. The train kept coming and hit the truck into the side. It drug it down the track, and that is when I got hurt. I don't remember anything after I got hit. The train did not blow its whistle or ring its bell between the time I came out of the Gulf Plant, and the time I got hit. The train was going about 12 or 15 miles an hour. The train did not slow up its speed or slacken its speed in any manner, if it did I could not tell it." He knew the railroad track was there; he had crossed it about twice a day, six days a week, for three months. After passing the rose bushes at the gate the track is clear and open, and one can see both ways for a distance of 900 yards. On cross-examination Dowdy

testified: "I looked to the left and didn't see anything. I didn't see anything to the right until I got on the track." He saw the train coming and sat there in the cab trying to get it started to get off the track. He remained in the cab until it and the train both came to a stop. The tank car was on his left on the sidetrack as he came back out of the Gulf Plant. That was the opposite side from which the train was coming. In order to unload his tank trailer, he had to pull his trailer wheels upon the track and back it to the left in position on the side of the track. He has been in that position unloading, and the train would pass.

J. H. Belton testified in substance. I was in my office on the morning of 7 March, 1951, at about 9:35 a.m. My office is about 200 yards from where you turn off to go to the Gulf Plant. I heard the 8:30 regular train pass and blow its whistle at the crossing at the Gulf Plant, but I did not hear this work train blow or ring the bell. I cannot say whether the bell was rung or the whistle blown. I just don't know.

J. B. Rhine testified in substance. I am a member of the State Highway Patrol. On 7 March, 1951, I went to the scene of a collision at the railroad crossing at the Gulf Plant. The road across the track at that point runs generally east and west. It dead ends at the Gulf Plant east of the railroad. When I arrived the train had been moved. The truck was 72 feet from the crossing. The tank was approximately parallel with the railroad but the tractor was turned with a few degrees to the left of the railroad. I went to the hospital and saw Dowdy. Dowdy told me: "I had turned around behind the gasoline plant, and proceeded toward Old 601. When I got on the railroad track with the tractor I saw the train coming, then I put gears in reverse, started to back up. I had moved a little backward when struck by engine of train. I did not hear bell or whistle. Just happened to look in that direction. I had planned to pull across tracks and back up to the plant." Rhine talked to the engineer, Moore, at the scene of the collision. Moore stated he did not see the vehicle; was warned by the fireman. As soon as he was warned of the danger, he applied the brakes and reached for the whistle cord, but did not blow the whistle. He said the bell was ringing, and he blew the whistle at the main crossing of Old 601. The railroad track is straight all the way up 827 feet and relatively level. There was an opening on the day of the accident of 29 feet after passing the garage through which the railroad track north or west was visible before reaching the rose bush at the gate. At that point one could see up the railroad track a distance of 827 feet. Though Rhine was not sure in all the 29 feet visibility was good. There are some rose bushes on the posts of the gate and there were a few bushes by the garage building. The railroad tracks were straight and level and there were no obstructions. After you pass the gate visibility was good for 1,240 feet to the west. The distance from

the gate at the entrance of the Gulf Plant or rose bush to the railroad track was 47 feet and 9 inches by actual measurement from the outside of the rose bush to the railroad track. In this entire space there is a clear view of the railroad tracks to the west all the way for about 1,200 feet. There are no buildings or anybody living on the side of the Gulf Plant. There was nothing to keep the engineer from seeing the truck on the track for a distance of 800 and some feet. The engineer pointed out to me where the engine had come to a stop, which, to the best of Rhine's memory, was the length of the engine and one and one-half car lengths farther down the railroad. Rhine would say the train traveled about 150 feet after the impact. The road leading into the Gulf Plant is sand, gravel and dirt, and about 16 feet wide.

The plaintiff Dowdy offered the testimony of six other witnesses, who testified as to his injuries, but knew nothing about the facts of the collision.

Burns testified as to the damage done to his tractor and oil tanker and that the insurance company paid for the repairs less $250.00 deductible on the tractor and $250.00 on the oil tanker. Burns offered the testimony of a mechanic as to the damage to his tractor and oil tanker.

Dowdy was recalled for further examination and testified that he remembers seeing Rhine at the hospital in Mount Airy, while the nurses and doctors were working on him, but he does not remember anything about any conversation between Rhine and himself.

At the close of the plaintiffs' evidence the defendants moved for judgment as of nonsuit as to all the plaintiffs. The motions were allowed. And from judgments in accordance therewith all the plaintiffs appealed to the Supreme Court, assigning error.

*Pittman & Staton and Gavin, Jackson & Gavin for all the plaintiffs, appellants.*

*W. T. Joyner, Teague & Williams, and H. E. Powers for all the defendants, appellees.*

PARKER, J. The plaintiffs' assignments of errors Nos. 1 to 4, both inclusive, which relate to questions asked witnesses by plaintiffs' counsel, objected to by the defendants, and not answered, have not been set out in the plaintiffs' brief. They are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court; *Dillingham v. Kligerman,* 235 N.C. 298, 69 S.E. 2d 500.

The remaining assignments of errors Nos. 5 and 6 are founded on exceptions challenging the rulings of the court below in allowing the motions for judgments as of nonsuit against all the plaintiffs, and the judgments signed in accord therewith.

There is no allegation in the plaintiffs' complaints or replies that the view of the railroad tracks was obstructed from the gate at the Gulf Plant to the railroad track, nor any evidence to that effect. The tank car on the sidetrack is not mentioned in the plaintiffs' pleadings. The plaintiffs offered two witnesses, who testified as to the distance from the gate to the track. Dowdy said it was approximately 25 or 30 feet; Rhine said it was 47 feet and 9 inches by actual measurement from the outside of the rose bush at the gate to the railroad track. The tank car on the sidetrack was on the opposite side of Dowdy from the approaching train. Dowdy testified that after you get out of the gate good you can see up the track to the west, from which the train was coming, a distance of about 900 yards. The track in that direction was straight. The time was about 9:35 a.m. The weather, as admitted in the pleadings, was clear and fair. Dowdy knew of the railroad track; he had crossed it twice a day, six days to the week, for three months. Dowdy drove his tractor out of the gate without stopping onto the railroad crossing, a place of danger. He looked to the left; when he looked to the right his tractor was upon the tracks, and he saw the approaching train 300 to 400 feet away.

Conceding the existence of negligence on the part of the defendants, which they strenuously deny, this case is controlled by the fact that Dowdy drove his tractor and oil tanker upon the railroad crossing in the face of an on-coming train, which he could have seen in the exercise of ordinary care, if he had looked to the right while he was traveling according to his testimony 25 or 30 feet from the gate to the railroad crossing, or according to actual measurement taken by his witness Rhine 47 feet and 9 inches. If Dowdy had looked to his right while traveling this distance, he could have seen the train and avoided injury. This negligence on Dowdy's part contributed to the injury and damage of all the plaintiffs, and bars recovery, unless they can bring themselves within the doctrine of the last clear chance. *Penland v. R. R.,* 228 N.C. 528, 46 S.E. 2d 303 (and cases cited); *Carruthers v. R. R.,* 232 N.C. 183, 59 S.E. 2d 782 (unobstructed view 24 feet and 8 inches from east rail of track); *Parker v. R. R.,* 232 N.C. 472, 61 S.E. 2d 370 (unobstructed view after he stopped 8 or 10 feet from east rail); *Herndon v. R. R.,* 234 N.C. 9, 65 S.E. 2d 320 (unobstructed view 45 feet from railroad track); *Stevens v. R. R., ante,* 412, 75 S.E. 2d 232.

"A traveler has the right to expect timely warning, *Norton v. R. R.,* 122 N.C. 910, 29 S.E. 886, but the failure to give such warning would not justify the traveler in relying upon such failure or in assuming that no train was approaching. It is still his duty to keep a proper lookout." *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137.

*Justice Brogden* in his characteristic style aptly said: "There are two lines of decisions involving crossing accidents that run through the body

of our law, as clearly marked and defined as the Gulf Stream that runs through the midst of the ocean." *Eller v. R. R.*, 200 N.C. 527, 157 S.E. 800. This case comes within the second class therein mentioned, where the plaintiffs took a chance and lost.

Dowdy was an employee of Burns, and at the time of the collision was acting within the scope of his employment. Dowdy's negligence is in law attributable to Burns. *Hampton v. Hawkins*, 219 N.C. 205, 13 S.E. 2d 227; *Rollison v. Hicks*, 233 N.C. 99, 63 S.E. 2d 190.

The Insurance Co. alleges in its joint complaint that it has paid to Burns for damage to its tractor and oil tanker $2,394.10, and is entitled to be subrogated to the rights of Burns to the extent of the amount paid. Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. *Liles v. Rogers*, 113 N.C. 197, 18 S.E. 104, 37, Am. St. Rep. 627. The party who is subrogated is regarded as entitled to the same rights, and, indeed, as constituting one and the same person whom he succeeds, *Bank v. Bank*, 158 N.C. 238 at 248, 73 S.E. 157; *Grantham v. Nunn*, 187 N.C. 394, 121 S.E. 662; *Beam v. Wright*, 224 N.C. 677, 32 S.E. 2d 213. A party can acquire no better right by subrogation than that of the principal. *Parsons v. Leak*, 204 N.C. 92, 167 S.E. 567. The Insurance Co. is regarded as constituting one person with Burns, and Dowdy's contributory negligence is in law attributable to Burns.

The next question presented: Does the evidence considered in its most favorable light make out a case for the jury on the doctrine of last clear chance? The principles of the doctrine of last clear chance have been defined countless times by this and other courts and various text writers, since its origin in the famous hobbled ass case of *Davies v. Mann*, 10 M. & W. 546, decided by an English Court in 1842. This doctrine does not arise until it appears that the injured party has been guilty of contributory negligence. *Redmon v. R. R.*, 195 N.C. 764, 143 S.E. 829; *Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 35 S.E. 2d 337; *Lee v. R. R.*, ante, 357, 75 S.E. 2d 143. Dowdy was guilty of such negligence in this case.

This doctrine has been clearly and succinctly stated in *Ingram v. Smoky Mountain Stages, Inc., supra:* "The contributory negligence of the plaintiff does not preclude a recovery where it is made to appear that the defendant, by exercising reasonable care and prudence, might have avoided the injurious consequences to the plaintiff, notwithstanding plaintiff's negligence; that is, that by the exercise of reasonable care defendant might have discovered the perilous position of the party injured or killed and have avoided the injury, but failed to do so."

It is stated in *Lee v. R. R., supra:* "The last clear chance does not mean the last possible chance to avoid the accident—citing authorities. It means such chance or interval of time between the discovery of the peril

of the injured party, or the time such peril should have been discovered in the exercise of due care, and the time of his injury as would have enabled a reasonably prudent person in like circumstances to have acted in time to have avoided the injury," citing authorities.

The doctrine of last clear chance does not apply when the plaintiff is guilty of contributory negligence as a matter of law. *Redmon v. R. R., supra; Sherlin v. R. R.,* 214 N.C. 222, 198 S.E. 640; *Ingram v. Smoky Mountain Stages, Inc., supra.*

Courts take judicial notice of subjects and facts of common and general knowledge. The law does not require us to be blind and deaf, and ignorant of facts of common and general knowledge to all men. *Reid v. Coach Co.,* 215 N.C. 469, 2 S.E. 2d 578, 123 A.L.R. 140; *Allen v. Bottling Co.,* 223 N.C. 118, 25 S.E. 2d 388 (common knowledge many of our improved roads 16 feet wide). In *Davis v. R. R.,* 170 N.C. 582, 87 S.E. 745, this Court took judicial notice of the fact that the force of a rapidly passing train would be centrifugal from the side of the train and would cause one to fall outward, instead of creating a vortex which would carry him beneath the train.

We take judicial notice of a fact of such common and general knowledge that the engineer's seat is on the right side of the locomotive and the fireman's on the left.

Dowdy drove his tractor and oil tanker upon the railroad track in the face of an on-coming train. His view was unobstructed from the time he left the gate to his left and to his right. He looked to the left, when he looked to the right his tractor was upon the railroad tracks, and he saw the approaching train 300 to 400 feet away. He is the only witness to the speed of the train. He testified it was going about 12 or 15 miles an hour. At that time his tractor and oil tanker were moving forward. Dowdy further testified, at that time he threw it into reverse, and the tractor started backward and stalled on the track.

This Court said in *Temple v. Hawkins,* 220 N.C. 26, 16 S.E. 2d 400, speaking of a truck that stalled on a railroad crossing in the face of an on-approaching train: "The engineer had a right to assume up to the very moment of the collision, that the plaintiff could and would extricate himself from danger. The fact of the failure to give a signal from the engine could not militate against the defendants, since all that such signal could have availed the plaintiff would have been to give him notice of the approach of the train, and this notice the plaintiff already had, since he saw the train at a distance of 1,500 feet down the track moving or in the act of starting to move in the direction of the crossing he was taking." In this case the plaintiff pleaded last clear chance.

A strikingly similar case is *Bailey v. R. R.,* and *King v. R. R.,* 223 N.C. 244, 25 S.E. 2d 833. The only eye witness of the collision, a witness for

the plaintiff, testified : "I saw the train way on up the track about 400 yards, and I saw the truck drive upon the track. The train looked to be about 400 yards up the track. I saw the truck drive up on the crossing and the train was still coming. The truck looked like it was trying to get off, kinder moved back and forth and settled down at the time the train hit it. After the train hit the truck it brought it way on down there the other side of me, took it on down there the other side of the switch." Bailey and King were killed. The Court in affirming a judgment of nonsuit quotes the words quoted above from *Temple v. Hawkins.* In the *Bailey* and *King cases* the plaintiffs did not plead the last clear chance.

There is no evidence that the engineer knew, or by the exercise of due care, could have known, that Dowdy was helpless upon the track—if, indeed, Dowdy was helpless. The defendants had a right to assume up to the very moment of the collision that Dowdy could and would extricate himself from danger. This Court has so stated the law in two similar cases. *Temple v. Hawkins, supra; Bailey v. R. R.* and *King v. R. R., supra.*

When the train was 300 to 400 feet away, according to Dowdy, the only eye witness to the collision who testified, his tractor was on the railroad tracks and going forward. When the tractor was going forward, it was not helpless or stalled on the crossing. Then Dowdy threw his tractor in reverse, and the tractor moved backwards and stalled on the crossing. How far was the train away then? The evidence does not show.

Dowdy drove on the railroad track from the side of the fireman. According to the plaintiffs' witness Rhine, Moore, the engineer, said at the scene of the collision : "He did not see the vehicle. Was warned by the fireman. As soon as warning of danger, applied brakes and reached for whistle cord but did not blow whistle; said the bell was ringing and stated he blew the whistle at main crossing of Old 601." While the engineer on the opposite side of the train from Dowdy, did not see the tractor and oil tanker, his fireman did, and he applied the brakes. According to the plaintiffs' evidence the train engine came to a stop the length of the engine and one and one-half car lengths further down the railroad, about 150 feet after the impact.

The plaintiffs offered no testimony as to how many cars were in the train, nor within what distance it could have been stopped at a speed of 12 or 15 miles an hour. Their evidence shows a prompt application of brakes when the fireman, who was on the left of the locomotive engine, gave the engineer warning. The plaintiffs have pleaded last clear chance, but their evidence considered in the light most favorable to the plaintiffs fails to show sufficient evidence for submission to a jury that the defendants by exercising reasonable care and prudence, might have avoided injurious consequences to the plaintiffs, notwithstanding the plaintiffs' contributory negligence.

The judgments of nonsuit entered in the Superior Court as to all the plaintiffs are

Affirmed.

JOHNSON, J., dissenting: It seems to me there was enough evidence to take this case to the jury, certainly as to the plaintiffs Bobby Burns, Inc., and Harford Mutual Insurance Company, if not as to Dowdy, under the doctrine of last clear chance. See 38 Am. Jur., Sec. 299; Annotations: 92 A.L.R. 47, p. 86; 119 A.L.R. 1041, p. 1045. There is evidence that the tractor-trailer stalled or "choked down" on the tracks when the train was some 300 or 400 feet from the crossing. The witness Dowdy said when he looked and saw the train that distance away "I throwed my tractor in reverse, let out my clutch right quick and my tractor choked down." It would seem there was ample evidence to justify the inference that the engineer or fireman in the exercise of due care should have seen the truck on the track and appreciated its stalled situation in time to have stopped the train and averted the collision. The track was straight and about level for a distance of some 827 feet. The train was traveling only 12 or 15 miles per hour, yet it "did not slow up . . . or slacken its speed in any manner. . . ." Indeed, the engineer told Patrolman Rhine "he did not see the vehicle" until warned by the fireman. He then "reached for the whistle cord. . . ." It was then too late.

It is stated in the majority opinion that the doctrine of last clear chance "does not apply when the plaintiff is guilty of contributory negligence as a matter of law." Conversely, may it not be said with equal force that one may not be adjudged contributorily negligent as a matter of law when the doctrine of last clear chance applies?

My vote is to reverse.