Royer, Respondent, vs. Saecker and another, Appellants.

*January 12—April 7, 1931.*

For the appellant Phillips there was a brief by *Benton, Bosser & Tuttrup* of Appleton, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Roger R. Tuttrup* and *Mr. Wilkie.*

For the appellant Saecker there was a brief by *Bradford & Bradford* of Appleton and *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *W. E. Fisher.*

For the respondent Royer there was a brief by *Winter & Winter* of Shawano, and oral argument by *P. J. Winter.*

The following opinion was filed February 10, 1931:

OWEN, J. On February 24, 1929, the plaintiff, twenty-five years of age, left Menasha in an automobile driven by the defendant Wesley Saecker for a pleasure trip to Appleton. Two other young men, Robert O'Keefe and David Demares, were also occupants of the car. They traveled north on highway 41. The car traveled at about twenty to twenty-five miles per hour while within the city limits of the city of Menasha. Upon passing the city limits Saecker speeded up to pass another car. Royer thereupon protested the rate of speed and Saecker slowed the car down somewhat, following behind a Dodge car owned by Joseph Schmirler, occupied by members of his family, and driven by his son Earl. After following this car a short distance, Saecker turned out to pass the Schmirler car. Seeing the car of the defendant Phillips approaching from the opposite direction, and being warned by Demares that he could not "make it," he attempted to again fall in behind the Schmirler car, in which attempt the front bumper of his car struck the rear bumper of the Schmirler car. His car skidded across the road and was struck by the oncoming Phillips car, causing serious personal injuries to the plaintiff, Royer.

The jury found the defendant Saecker negligent in the operation and handling of his car; in that he did not keep a proper lookout; in attempting to pass the Schmirler car;

and with respect to the speed at which he operated his car. Saecker does not challenge the sufficiency of the evidence to support the finding of the jury with respect to his negligent conduct. He seeks a reversal of the judgment solely on the ground that the plaintiff Royer was guilty of contributory negligence and that he assumed the risk. It is contended that the plaintiff failed to keep a proper lookout and that he acquiesced in the rate of speed at which the car was being driven.

The evidence shows that when Saecker speeded up his car to pass the car just ahead of him after reaching the city limits, Royer did protest against the speed at which Saecker was driving and suggested that they were not "going to a fire." After this protest on the part of Royer, Saecker slowed down and drove from that time until he attempted to pass the Schmirler car but a short distance (the exact distance to be discussed later) at a speed of thirty-five miles an hour. Upon attempting to pass the Schmirler car, he turned out suddenly and without any warning and, upon discovering Phillips's car approaching, immediately attempted to regain his place back of the Schmirler car. In view of the fact that plaintiff once protested against the rate of speed, and that thereafter Saecker slowed down and drove at a reasonable rate of speed until attempting to pass the Schmirler car, it certainly cannot be said as a matter of law that Royer acquiesced in the rate of speed.

While a guest cannot acquiesce in negligent and reckless driving and recover against the host if injury results therefrom, it was said in *Krause v. Hall,* 195 Wis. 565, at p. 570 (217 N. W. 290), that no "attempt has been made to define the amount of protestation necessary to relieve the guest of contributory negligence as a matter of law;" and in *Bryden v. Priem,* 190 Wis. 483, 209 N. W. 703, it was held that the failure of a guest to protest against a speed of from thirty-five to forty miles an hour for a period of twenty-five

seconds is not contributory negligence as a matter of law where the defendant drove the car at a reasonable and lawful rate of speed up to that time. The plaintiff having once protested against the rate of speed at which the defendant Saecker was driving, the defendant having slowed down to a rate of speed of thirty-five miles an hour, which he maintained until his attempt to pass the Schmirler car—a matter of seconds as will be shown later,—and there being no time nor opportunity to protest against his attempt to pass the Schmirler car, it cannot be held as a matter of law that the plaintiff acquiesced in the reckless driving of the defendant.

It is further contended that the plaintiff failed to keep a proper lookout. There was no occasion for him to keep a lookout for cars coming on the left-hand side of the road as long as Saecker was in his proper place at the right-hand side of the road. Saecker left the right-hand side of the road and turned to the left-hand side so suddenly and without any warning that a lookout on the part of Royer, who occupied the rear seat, would not have averted the accident nor accomplished any good purpose. Whether or not the plaintiff kept a proper lookout, his failure, if any, in that respect did not proximately contribute to the collision. Neither do we consider that the conclusion that Royer assumed the risk is compelled or even justified by the evidence. The contention in this respect is based upon the fact that Royer was frequently a guest in Saecker's automobile and was perfectly familiar with his habits of driving. However, there is no evidence from which it can be inferred that Saecker was a habitually reckless driver, nor does it appear that he had any habits of driving known to Royer which were responsible for this accident, as was the case in *Page v. Page,* 199 Wis. 641, 227 N. W. 233, where the accident was the result of the daughter's propensity to turn corners too fast for safety, which propensity was known to the plaintiff, her mother, and in *Krueger v. Krueger,* 197 Wis.

588, 222 N. W. 784, where the plaintiff knew that the driver, her son, was exhausted by the loss of sleep, by reason of which she assumed the risk of his falling asleep at the wheel. We discover no reason justifying a reversal of the judgment upon the appeal of the defendant Saecker.

We come now to consider the appeal of the defendant Phillips. The jury found him negligent in failing to keep a proper lookout and with reference to speed. Phillips left Appleton that Sunday afternoon, driving south on highway 41 with Milwaukee as his prospective destination. He testifies that he was driving moderately, and that at no time did he exceed thirty miles per hour. He testified that he saw the Saecker car as soon as it turned onto his side of the road to pass the Schmirler car, and that he immediately applied the brakes and did everything possible to stop his car; that the brakes were in good condition, and that, due to the icy condition of the road on that day, driving at his then rate of speed he could successfully stop his car without skidding within a distance of 100 to 125 feet. It appears that there were snow banks on either edge of the concrete highway preventing his turning to the side, that the concrete was icy and slippery, and that when his car was brought to a stop after striking the Saecker car it was in its proper place on the highway, and that the Saecker car was diametrically across his path. Although it appears that the Saecker car was badly damaged as a result of the collision, it does not appear that it was thrown off from the highway, or in fact any distance away from the Phillips car from which the inference may be drawn that at the time of the collision the Phillips car was not running at a fast rate of speed.

The occupants of the Schmirler car all testified that they saw the Phillips car coming towards them and that it was maintaining about the same rate of speed at which the Schmirler car was proceeding, which they all agreed was

between twenty-five and thirty miles an hour. Every occupant of the Saecker car was asked to testify whether Phillips made any effort to reduce his speed after the Saecker car turned onto his side of the highway, and they all answered that they could not tell, and their testimony constitutes no refutation of Phillips's testimony that he did everything in his power to bring his car to a stop in time to avoid the collision. Henry Liethen, another witness, testified that he left Appleton that afternoon, driving south on highway 41; that at no time did he drive over thirty miles, and gained steadily on the Phillips car, which came into view ahead of him just before the collision. Upon this testimony there is no support for the finding of the jury that Phillips was negligent in failing to keep a proper lookout or with respect to the speed at which he operated his car. This finding of negligence on the part of Phillips cannot be sustained unless the record discloses other evidence which warranted the jury in disregarding the evidence bearing upon the lookout and rate of speed maintained by Phillips, just reviewed.

The appellant refers to certain evidence in the record which it is contended conflicts with the testimony just reviewed, and makes the rate of speed at which Phillips was driving a question for the jury. We have considered this evidence and conclude that it proves too much. It convicts Phillips of driving at a rate of speed unbelievable if not impossible. For instance, Saecker testified that he did not see Phillips until he turned out to pass the Schmirler car, and when he saw him he was two-tenths of a mile distant. The occupants of the Saecker car variously estimate the distance it was back of the Schmirler car from eight to twenty-five feet at the time Saecker turned out to pass. That after he turned out to pass the Schmirler car he proceeded at a rate of speed greater than that maintained by the Schmirler car,

is indicated by the fact that he bumped the Schmirler car in his attempt to regain his position back of that car. If he gained on the Schmirler car at the rate of five miles an hour: that is to say, if in his attempt to pass the Schmirler car he drove five miles an hour faster than the Schmirler car was being driven, he gained on the Schmirler car at the rate of about seven and one-third feet per second. In three seconds he would have gained twenty-two feet, which is nearly the greatest distance that any one testified the two cars were apart when Saecker attempted to pass. If the Schmirler car was proceeding at the rate of thirty miles per hour, during that time it proceeded 132 feet. Saecker says that after bumping the Schmirler car his car skidded a distance of from forty to fifty-five feet. If so, it kept up with the Schmirler car, as the collision took place at a point opposite the Schmirler car. From the time Saecker turned out to the time of the collision, therefore, the time could not have exceeded four seconds, during which period the Schmirler car, proceeding at the rate of thirty miles per hour, covered 156 feet. If the Phillips car was two-tenths of a mile away when Saecker first saw it, it was at least 1,030 feet from the Schmirler car when Saecker turned out. For a collision to take place under these circumstances, it would be necessary for Phillips to cover 874 feet while Schmirler covered 156 feet, which would require a rate of speed on the part of Phillips exceeding 150 miles per hour. This renders Saecker's testimony that Phillips was two-tenths of a mile away when he attempted to pass the Schmirler car, unbelievable, and throws no doubt upon the testimony of the other witnesses with reference to the rate of speed of Phillips's car. While it cannot be claimed that the above assumptions reflect the exact situation, they deal with the situation upon the hypothesis most favorable to the defendant Saecker permitted by the record.

Another piece of testimony relied on by the appellant is that of the witness Demares, who with Saecker occupied the front seat in the Saecker car. He testified that when the Saecker car was on a knoll he saw the Phillips car coming around the curve at the airport, a distance of six-tenths of a mile away, and that the accident occurred about four-tenths of a mile from where he then saw the Phillips car, indicating that the speed of the Phillips car was twice that of the Saecker car. At that time the Schmirler car was one-eighth of a mile ahead of the Saecker car, according to his testimony. At this point, therefore, the distance between the Schmirler car and the Phillips car was 2,640 feet, between the Saecker car and the Phillips car 3,168 feet, and between the Saecker car and the Schmirler car 528 feet. We know that the accident did not happen until the Saecker car overtook the Schmirler car. If the Saecker car was driven ten miles an hour faster than the Schmirler car, it gained on the Schmirler car at the rate of fourteen and two-thirds feet per second. To gain 528 feet required approximately thirty-seven seconds. During this time the Schmirler car went 1,369 feet if it proceeded at the rate of twenty-five miles per hour, which was more than one half of the distance between the Phillips and the Schmirler cars when Demares first saw the Phillips car and when he says it was six-tenths of a mile away. These computations demonstrate that if Demares' estimate was anywhere near correct, the Schmirler and Phillips cars were proceeding at about the same rate of speed just as testified to by all the witnesses, and this testimony does not tend to contradict the testimony of those witnesses in the case fixing the rate of speed of the Phillips car as below that of thirty miles per hour.

We find no support in the record for the finding that Phillips was negligent with respect either to lookout or rate of speed, and the judgment against him must be reversed. It is apparent that as soon as Saecker turned out he

discovered the approach of the Phillips car, immediately concluded that he could not safely pass the Schmirler car, and attempted to retrieve his position back of that car. He probably would have succeeded except for the icy condition of the highway, which caused his car to skid across the pathway of the Phillips car. There is nothing to indicate that Phillips was coming at an excessive or unlawful rate of speed, that he did not see the Saecker car as soon as it was projected into the line of his travel, or that he did not exercise proper care in his attempt to stop his car so as to avoid the collision.

*By the Court.*—Upon the appeal of the defendant Saecker the judgment is affirmed. Upon the appeal of the defendant Phillips the judgment is reversed, and cause remanded with instructions to enter judgment dismissing the complaint as against the defendant Phillips.

A motion for a rehearing was denied, with $25 costs, on April 7, 1931.