## Richmond

ATLANTIC COAST LINE RAILROAD CO. v.

PENN L. WITHERS, JR., ET AL.

and

R. DAWSON TAYLOR v. PENN L. WITHERS, JR., ET AL.

June 18, 1951.

Record Nos. 3783, 3786.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

494

The opinion states the case.

*J. M. Townsend* and *Russell T. Bradford,* for the plaintiff in error, Atlantic Coast Line Railroad Co.

*Preston P. Taylor, Richard B. Kellam* and *Leigh D. Williams,* for the defendants in error, Penn L. Withers, Jr., et al.

*Williams, Cocke & Tunstall,* for the plaintiff in error, R. Dawson Taylor.

*Preston P. Taylor, Richard B. Kellam, J. M. Townsend* and *Russell T. Bradford,* for the defendants in error, Penn L. Withers, Jr., et al.

WHITTLE, J., delivered the opinion of the court.

Penn L. Withers, Jr., plaintiff in the court below, brought his notice of motion for judgment against Atlantic Coast Line Railroad Company and Russell Dawson Taylor, defendants below, seeking to recover for personal injuries caused by the concurring negligence of the defendants in a collision between an automobile driven by the defendant Taylor, in which the plaintiff was a guest passenger, and a train of the defendant railroad company, at a highway grade crossing near New Hope, in the State of North Carolina. The defendant Taylor was a resident of Princess Anne county, Virginia, where venue of the suit was obtained.

Upon the completion of the evidence in the case the court overruled the separate motions of the two defendants to strike the evidence of the plaintiff, and a jury verdict in favor of Withers in the sum of $35,000 against both defendants was returned. The court overruled separate motions of the defendants to set aside this verdict and enter final judgment in their favor, or in the alternative, to set aside the verdict and grant the defendants a new trial. Judgment was entered on the verdict and a writ of error was granted by this court.

The defendant railroad company vigorously denies negligence on its part and insists that if any act of negligence was committed on the occasion defendant Taylor is the culprit. Taylor, on the other hand, just as vigorously denies negligence and points an accusing finger at the railroad. Both defendants are in accord, however, in their claim that even if any negligence can be traced to them, the plaintiff cannot recover as he is guilty of contributory negligence which should bar his recovery, and they are also in accord in their contention that the verdict is excessive.

The facts in the case are, generally, as follows: On November 5, 1948, in the afternoon, the exact time being in dispute, the plaintiff, Penn Latham Withers, Jr., left Virginia Beach with three friends as guests in a car driven by Dawson Taylor, one of the defendants. The party was en route to Chapel Hill, North Carolina. They were to visit friends that night and attend a football game the next day. Withers, the plaintiff, was seated by defendant Dawson Taylor, the driver of the car. Johnson, Walsh and Guy, the other members of the party, occupied the

rear seat. There was some evidence as to several members of the party having had drinks in the afternoon. There is positive evidence that the driver, Taylor, did not have anything to drink, and the indulgence of all parties was of such minor character that it is not herein stressed.

The party stopped at Suffolk, Virginia, for gasoline, and they also stopped at a small town in North Carolina for dinner. After dinner they returned to their former positions in the automobile and continued their journey. They were using Route No. 98, which is a main, hard-surfaced, two-lane highway. This road runs between Rocky Mount and Durham, North Carolina. The accident occurred on this highway, between these two cities, at a place called New Hope.

The parties were not familiar with this route, and had no prior knowledge of the railroad crossing.

Many maps and pictures are among the exhibits graphically showing the situation at the scene of the accident. Route 98 runs generally northwest and southeast, and the railroad tracks run generally northeast and southwest. The road crosses the railroad at an acute angle. At the crossing the top part of the rail is level with the hard surface of the road. The crossing is level and smooth. For a mile or more along the highway as the automobile approached the crossing from the southeast, the road was straight and level, with a very slight ascending grade within a few hundred feet of the crossing.

On the left of the road approaching the crossing at a distance of 140 feet therefrom was a combination gasoline service station and store. The front of this establishment was equipped with very bright lights. The night was dark and overcast. The evidence is in conflict as to the speed of the automobile at and before the time of the accident. An effort to show excessive speed is put forward by the railroad. This defendant states that the weight of evidence shows that the party left Virginia Beach at 3:30 p.m., that the collision occurred around 7:45 p.m., and that as the distance between Virginia Beach and New Hope, North Carolina, the place of accident, was approximately 180 miles, of necessity the automobile had to travel at an excessive speed.

Defendant Taylor gives this version as to what happened just prior to and at the time of the accident: ''Well, as has been previously established, I came over a hill and there was a down-

grade, and as I was coming downgrade I noticed the lights of the service station on the left, and not being able to anticipate whether they would blind my vision I didn't slow up until just before I got to the filling station when I took my foot off the accelerator, and traveling at fifty-five miles or a little bit under you are traveling about eighty feet a second, and as I passed through there, after I got on the other side of it, I slammed on the brakes. * * * I slammed on the brakes because as I got on the other side (of the filling station lights) I saw the train at a position of about 120 feet from the train, * * * I angled to the left hand side of the road and hit the train at the right front end on the side of the car."

The place of accident is on the Nashville or Spring Hope branch of the defendant railroad. The railroad's version of what happened is substantially as follows: The train consisted of 23 gondola and hopper cars loaded with stone of a grayish white color which was piled in the center of the cars some 6 to 8 inches above the black sides of the cars. The railroad at this point is a single track, from Rocky Mount to Lassiter (41 miles). There is a spur track branching off west of Route 98 and this comes back to the main line track east of the highway. There was an empty box car on the siding east of the highway and the orders were to pick up this car. The movement was in charge of trainman Bullard. The engineer pulled over the crossing, threw a ten-minute fusee in the road south of the crossing and stopped with the engine and some six cars east of the crossing. Bullard cut the engine and four cars from the train and signalled the engineer forward east past the switch point, threw the switch, and signalled the engineer back west on the siding until coupling was made with the empty box car.

Bullard found the hand-brake on the empty box car stuck and he could not loosen it with his hands. He signalled the engineer forward and the five cars were pulled east beyond the switch point and then shoved back to the body of the train. Several automobiles had come up to the crossing, so it was decided to cut the train and let them pass before further attempting to loosen the brake on the box car. He cut the train seven cars from the engine and signalled the engine forward (east), thus clearing the crossing. He then got a hammer from the engine and loosened the stuck brake on the box car. Then he went back to the crossing and signalled the engine back west with his lantern.

It came back at a speed of from two to three miles per hour and he waited until the lead car was about the center of the highway and no automobiles were in sight. He then walked ahead of the seven cars to the end of the standing train which was about 30 feet west of the crossing. At this point he saw the lights of the oncoming automobile and heard the brakes when it was about at the service station. He waved his lantern at it. The automobile curved to the left and crashed into the train with a terrific noise. The west end of the seven cars was just a few feet from where he was standing so he took a couple steps and turned the angle cock to release the air and prevent the train from moving.

Bullard then ran to the automobile. He estimated the speed of the automobile to be 65 to 70 miles per hour when the brakes were applied, and that it hit the gondola at about 40 miles per hour.

The evidence of Bullard as outlined above is corroborated in part by Engineer Bridges and other members of the train crew.

This accident happened in North Carolina, hence the law of that State must be applied on the question of liability. *Baise* v. *Warren,* 158 Va. 505, 164 S.E. 655. In Virginia the liability of the host to his guest is based upon gross negligence. *Boggs v. Plybon,* 157 Va. 30, 160 S.E. 77. In North Carolina, ordinary negligence on the part of the host will support a verdict in favor of the guest. *Sutton* v. *Bland,* 166 Va. 132, 184 S.E. 231.

In North Carolina there is no comparative negligence rule in railroad crossing cases such as we have in Virginia, and contributory negligence therefore bars recovery.

North Carolina has adopted a rule designated "Outrunning one's lights", where it is held in certain instances, that the operator of an automobile must operate it in such a manner and at such speed as will enable him to stop within the radius of his lights. *Weston* v. *Southern Ry. Co.,* 194 N.C. 210, 139 S.E. 237.

While the above variations between the laws of Virginia and North Carolina are interesting, in both jurisdictions it is incumbent upon a railroad company to take reasonable precautions to protect the safety of travelers at railroad crossings, and whether or not this is done, in a particular case, is ordinarily a question for the jury under proper instructions.

In this case it is admitted by the railroad company that on

this dark night the crossing was obstructed. This defendant knew of the existence of the service station with the bright lights within 140 feet of the crossing. It knew, or should have known, of the existence and condition of the mutilated, weather-beaten warning sign which it had placed on the road to warn travelers on the highway of the crossing. The condition of this sign is both described in testimony and shown in the exhibits. This defendant knew that this was one of the heavily traveled highways in the State, used by strangers passing through the State as well as local traffic. It contends that its brakeman was standing near the road with a lantern as a warning to approaching automobiles. Yet the record has abundant evidence to show that the brakeman was not in sight, and that the ten minute fusee formerly placed in the road, had long since burned out. Some witnesses who rushed to the scene from the service station after the crash saw the brakeman approaching the crossing from a long distance down the tracks, at a point where he could not possibly have warned any traveler on the highway.

The defendant railroad argues that, "it was not to be anticipated that an automobile would approach at such speed that it could not be stopped before striking it (the train)". If this could not be anticipated then why was it necessary for the trainmen to throw out the ten-minute flare in the first instance, and why was it necessary for them to have the brakeman present for a time with his lantern? The questions here presented were jury questions.

"It is a question of due care under the circumstances. The railroad company must use such reasonable care and precaution as ordinary prudence would indicate." *Caldwell* v. *Southern Ry. Co.* (1940), 218 N.C. 63, 10 S.E. (2d) 680.

"It was incumbent upon defendant to take such reasonable precautions as were necessary to the safety of travelers at public crossings. This was a question of fact for the jury." *Dudley* v. *Atlantic Coast Line R. Co.*, 180 N.C. 34, 103 S.E. 905.

This defendant realized that "due care" required it to throw out the flare at first, that due care required a watchman with a lantern at first, and the jury had a right to resolve that this was a continuing duty so long as the crossing was blocked. The flares and warning lanterns shown in the record as having been put in place after the crash were too late to help plaintiff in this case.

The court was right in holding that the evidence was sufficient to submit the question of the railroad's negligence to the jury.

We come now to consider the sufficiency of the evidence as it applies to the negligence of the defendant Dawson Taylor. Here, under the North Carolina law, simple negligence on the part of the driver will suffice. Taylor's own evidence is sufficient to carry his case to the jury. He says that while traveling at 55 miles per hour or a bit under "I noticed the lights of the service station on the left and not being able to anticipate whether they would blind my vision I didn't slow up until just before I got to the filling station when I took my foot off the accelerator", etc. Witnesses variously estimated the speed of the car at the time the brakes were applied from 55 to 70 miles per hour. The question of Taylor's negligence was a jury question.

The defendant railroad suggests that even though it were guilty of negligence in this case, its negligence is "insulated" by Taylor's negligence, and that Taylor therefore is solely responsible for the accident.

The case of *Hubbard* v. *Murray,* 173 Va. 448, 3 S.E. (2d) 397, deals with the question of insulated negligence and demonstrates how the rule applies. Justice Eggleston, speaking for the Court in this case, says:

"Where a second tort-feasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter by an independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof. The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident.

"These principles apply here. The testimony is undisputed that the driver of the truck had an unobstructed view of the bus standing on the highway for a distance of four hundred feet; that by the use of his brakes he could have brought his vehicle to a stop, under the conditions then existing, within one hundred feet or even less, and yet through inattention or lack of control he drove his truck into the rear of the bus. We think it is clear from these facts that the negligence of the truck driver was the sole proximate cause of the accident, and the fact that the bus

was improperly stopped on the highway was merely a circumstance of the collision, or a remote cause thereof.''

In *Powers* v. *Sternberg,* 213 N. C. 41, 195 S.E. 88, 90, the Supreme Court of North Carolina quotes with approval from the case of *Kline* v. *Moyer,* 325 Pa. 357, 191 A. 43, 111 A. L. R. 406, as follows:

''* * * Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties.''

In this case Taylor did not become aware of the danger until his negligence, added to that of the railroad, apparently made the crash inevitable, which would make the acts of both tort-feasors contributing and proximate causes for which they would be jointly liable.

''No negligence is insulated so long as it plays a substantial and proximate part in the injury. Restatement of the Law, Torts, Sec. 447.'' See *Henderson* v. *Powell,* 221 N.C. 239, 19 S.E. (2d) 876, 879.

Defendant railroad company joined with plaintiff Withers in excepting to the court's failure to give certain instructions dealing with the question of defendant Taylor operating his car at such speed that he would be unable to stop same ''within the radius of his lights''. So far as Withers is concerned the question is moot, as he recovered a verdict.

The instruction offered by the defendant railroad company and refused by the court reads as follows: ''The court instructs the jury that it is negligence *as a matter of law* for a person to drive an automobile upon a travelled public highway used by vehicles and pedestrians at such rate of speed that said automobile cannot be stopped within the distance at which the operator of said car is able to see objects upon the highway in front of him.'' (Italics supplied.)

The rule of ''Outrunning one's lights'' was adopted in North Carolina in 1927 in the case of *Weston* v. *Southern Ry. Co.,* *supra.* Since the decision of the *Weston Case* the rule has been dealt with by the North Carolina court according to the facts and circumstances in each particular case.

The instruction as offered tells the jury that ''it is negligence

as a matter of law for a person to drive'', etc. We are here dealing with a guest case. Plaintiff Withers was not driving the car, it was being driven by defendant Taylor. The instruction as offered simply states the cold rule, making no application whatever to the facts in the case.

The court did give, at the request of the railroad company, the following instruction:

''The court further instructs the jury that the following provisions of law are applicable in this case:

''1. The head lamps of motor vehicles shall be so constructed, arranged and adjusted that they will under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead.

''2. Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.''

In the case of *Thomas* v. *Thurston Motor Lines* (1949), 230 N.C. 122, 52 S.E. (2d) 377, the court, dealing with the rule, has this to say:

''Few tasks in trial law are more troublesome than that of applying the rule suggested by the foregoing quotation to the facts in particular cases. The difficulty is much enhanced by a tendency of the bench and bar to regard it as a rule of thumb rather than as an effort to express in convenient formula for ready application to a recurring factual situation the basic principle that a person must exercise ordinary care to avoid injury when he undertakes to drive a motor vehicle upon a public highway at night. The rule was phrased to enforce the concept of law that an injured person ought not to be permitted to shift from himself to another a loss resulting in part at least from his own refusal or failure to see that which is obvious. But it was not designed to require infallibility of the nocturnal motorist, or to preclude him from recovery of compensation for an injury occasioned by collision with an unlighted obstruction whose presence on the highway is not disclosed by his own headlights or by any other available lights. When all is said, each case must be decided according to its own peculiar state of facts. This is true because the true and ultimate test is this: What

would a reasonably prudent person have done under the circumstances as they presented themselves to the plaintiff? 1 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., part 2, §§ 741, 751.''

The refused instruction was evidently offered by the railroad in an attempt to make certain that defendant Taylor would be joined in the verdict. Under the circumstances of this case it could not relieve the railroad of liability. In the light of the joint verdict, and other instructions, its refusal was not prejudicial.

Taylor contends that the trial court erred in giving plaintiff's instruciton 3-P. This instruction told the jury that it was the duty of the driver of the car to keep a proper lookout, to have his vehicle under reasonable control, and to drive his vehicle at a speed and in a manner so as not to endanger the life, limb or property of others, etc. Exception was taken to the giving of this instruction, first upon the general ground that ''defendant Taylor was guilty of no negligence'', and second, ''there was no evidence that Taylor was not keeping a proper lookout''. This defendant relies upon the case of *Gale* v. *Wilber,* 163 Va. 211, 175 S.E. 739, which case holds that the giving of the instruction dealing with ''proper lookout'' was improper under the circumstances of that case. A reading of the case will disclose an entirely different set of facts from the instant case. There was ample evidence in the case at bar upon which to predicate this instruction and it was properly given. *Virginia Elec., etc., Co.* v. *Vellines,* 162 Va. 671, 175 S.E. 35.

Taylor next contends that the court erred in not giving instruction D-14, dealing with the doctrine of last clear chance. This instruction would have told the jury that if the brakeman saw the approaching automobile ''traveling at a rapid rate of speed, and a collision would likely occur, and thereafter, by the exercise of ordinary care, could have stopped the train and avoided the accident, you shall find your verdict in favor of the plaintiff against the Atlantic Coast Line and in favor of Dawson Taylor.''

Counsel for defendant Taylor argues that ''this instruction should have been given in view of the testimony of the head brakeman Bullard showing that he had a clear chance to avert the accident. Under this instruction, if given, the jury could well and easily have found that negligence of Bullard was the

real and proximate cause of the accident, insulating the negligence of Taylor, if any, and rendering the railroad solely liable for the accident."

The argument and the instruction both are based upon a misunderstanding, on the part of Taylor's counsel, as to which side of the highway Bullard was on when he saw the approaching automobile. Bullard, in his evidence, describing where he was standing, uses the word "road", meaning "railroad", not "highway", as interpreted by counsel for Taylor. It is contended that Bullard was on the east side of the (road) highway, within five feet of the gondola, and that upon seeing the automobile approaching he should have opened the angle cock on the gondola and stopped the train before it blocked the crossing. Clearly Bullard, on the west side of the highway, was too far beyond the reach of the angle cock to stop the train after he saw the approaching automobile.

Had Bullard been where counsel for Taylor contend he was, it would hardly have been possible for him to have acted as suggested, in time to have stopped the train, and it would have been of no avail because the crossing was at the time blocked.

We are not here passing upon the question of whether the last clear chance doctrine can be invoked by one co-defendant against another. Suffice it to say that a reading of this record does not disclose evidence upon which to base the instruction and it was therefore no error to refuse it.

Both defendants contend that Withers acquiesced in any negligence committed on this occasion and therefore should not recover. The principle relied upon is stated by the North Carolina court in the case of *Bogen* v. *Bogen*, 220 N.C. 648, 18 S.E. (2d) 162, as follows:

"The guest cannot acquiesce in negligent driving and retain a right to recover against the driver for resulting injuries therefrom. 4 Blashfield Cyc. of L. & P., Perm. Ed. § 2392, pp. 194, 195; *Lorance* v. *Smith,* 173 La. 883, 138 So. 871; *Royer* v. *Saecker,* 204 Wis. 265, 234 N.W. 742. The basis for charging the passenger with negligence in such case is simply that of his own personal negligence in thus relying entirely and blindly upon the driver's care."

In the North Carolina case of *Mason* v. *Johnston,* 215 N.C. 95, 1 S.E. (2d) 379, at page 381, this is said:

"As the rules in regard to the care which must be exercised

by a guest, that is whether he is guilty of contributory negligence, are the same in actions by the guest against his host and in actions by the guest against third persons, * * * The general rule established may be stated to be that while the driver's negligence may not ordinarily be imputed to the guest or passenger riding with him so as to bar guest's or passenger's right of recovery against the other driver, yet, when danger arising out of the operation of a vehicle by another is manifest to a passenger or a guest who has adequate opportunity to control the situation, if he sits without protest and permits himself to be driven to his injury, his negligence will bar a recovery—such negligence is not the negligence of the driver imputed to him as a passenger, but his own negligence in joining with the driver and facing manifest danger. In such case the passenger becomes co-adventurer in the risk. In other words, if the plaintiff, in the exercise of due and reasonable care, such as would be exercised by a reasonably prudent and cautious man, saw or should have seen the driver was conducting himself in a negligent manner, and if, under these circumstances, a reasonably prudent and cautious man would have warned or cautioned or attempted to persuade the driver from his reckless conduct, and to drive his car in a careful and prudent manner, and failed to give such warning or caution or to make such attempt, and such failure caused or contributed to the collision, then the occupant would be guilty of contributory negligence which would bar his recovery.''

There are many Virginia cases holding to the same effect. See *Sutton* v. *Bland, supra,* and *Butler* v. *Darden,* 189 Va. 459, 53 S. E. (2d) 146.

Looking to the facts in the instant case we see that these young men had traveled without incident from Virginia Beach to the scene of the accident, Dawson Taylor driving all the way, a distance of approximatey 175 miles. According to their evidence, they had maintained a steady, reasonable rate of speed. When they approached the service station, just before the crash, Withers states that he did not know how fast they were traveling, that he was paying no special attention to the operation of the car, that he does not recall whether he was looking ahead or talking to his companions on the rear seat. He had never been over the road before and did not know of the existence of the crossing; that until the time Taylor applied his brakes, just before the crash, there was no occasion for him to warn the driver.

No witness in the car testifies contrary to this. They substantiate the fact that until the brakes were applied there was no occasion for warning.

 Under such circumstances, whether or not this plaintiff was guilty of contributory negligence was plainly a jury question under proper instructions. It cannot here be successfully argued that the court did not, under proper instructions, place this question squarely before the jury for its determination.

In the case of *Smith* v. *Atlantic, etc., R. Co.*, 200 N.C. 177, 156 S.E. 508, plaintiff's intestate was fatally injured while riding as a passenger in an automobile at a public crossing in Greensboro, North Carolina, when the automobile in which he was riding was in collision with defendant's train. The defense of contributory negligence was interposed and the lower court allowed the case to go to the jury on the question of both primary and contributory negligence. The Supreme Court of North Carolina, in affirming the lower court, said:

"'* * * If he saw, or by the exercise of reasonable care could have seen, no more than the driver and his fellow passenger, who were under a like duty, saw, it was for the jury and not for the court to determine whether or not, under all the circumstances, he contributed to his death by his own negligence. If when he saw, or by the exercise of reasonable care could have seen, that an engine and tender on defendant's track was approaching the crossing, he also saw that the driver had seen the approaching engine and tender, and with full appreciation of the impending danger was doing all in his power, under the circumstances, to avoid a collision, it was for the jury and not for the court to say whether or not his failure to speak to the driver and warn him of the danger was negligence. It is a matter of common knowledge to those who ride in automobiles—certainly to those who drive them—that 'back-seat' driving often confuses a driver and, more often than otherwise, prevents him from avoiding dangers encountered on the road.''

In the case of *Samuels* v. *Bowers*, 232 N.C. 149, 59 S.E. (2d) 787, decided by the Supreme Court of North Carolina in 1950, the court, dealing with contributory negligence, said:

"The rule is well settled that involuntary non-suit on the ground of the contributory negligence of the plaintiff may be allowed only when the plaintiff's evidence, considered in the light most favorable for him, establishes his own negligence as

a proximate contributing cause of the injury so clearly that no other conclusion reasonably can be drawn therefrom. *Collingwood* v. *Winston-Salem Southbound Ry. Co.*, 232 N.C. 192, 59 S.E. (2d) 584; *Winfield* v. *Smith*, 230 N.C. 392, 53 S.E. (2d) 251; *Bundy* v. *Powell*, 229 N.C. 707, 51 S.E. (2d) 307; *Hobbs* v. *Drewer*, 226 N.C. 146, 37 S.E. (2d) 121; *Cole* v. *Koonce*, 214 N.C. 188, 198 S.E. 637."

If there is no apparent danger in the manner in which the car is being operated, the passenger is not required to interfere. The danger, if apparent, must have existed for such period of time as would have enabled the guest to give timely warning. *Mize* v. *Gardner Motor Co.*, 166 Va. 415, 186 S.E. 108, and *Steele* v. *Crocker*, 191 Va. 873, 62 S.E. (2d) 850.

The jury having resolved the question of contributory negligence in favor of the plaintiff, under the law and facts of this case, we should not disturb their findings.

We now come to the final assignment of error relied upon by both defendants,—that the verdict is excessive. Dr. Walter S. Hunt, an orthopedic surgeon, testified to plaintiff's injuries. He was hospitalized from November 5, 1948 until the latter part of April, 1949. The doctor "terminated his disability the middle of August, 1949", at which time he could have returned to light work. His doctors' and hospital bills amounted to approximately $4,000. His injuries are described by Dr. Hunt as follows:

"On November 5, 1948, at the time I saw Mr. Withers, he had been seen and had been given emergency care by the resident physician at Rex hospital. His right leg was immobolized in a Thomas splint and the lacerations about his face had been taken care of in the emergency room. On November 6th, under a local anesthesia, a Steinman pin was inserted through his right tibia and his leg was placed in balanced traction. The x-rays taken of his right femur on the day of his admission revealed a badly comminuted fracture of the midshaft of the right femur. * * * Due to the severity of the comminution of the fracture, the traction which was applied to the leg produced distraction; by that I mean separation of the fragments; and in order to secure union, contact between the bone ends had to be made and this was achieved by decreasing the traction. The decrease in the traction shortened the length of the femur and this accounts for the final and result of one inch shortening of the right leg. Suf-

ficient solid bony union was secured so that Mr. Withers was removed from traction on December 28th; union had not progressed sufficiently, however, to leave him without immobolization therefore on the same day a spica cast was applied. Mr. Withers wore this cast for approximately two months when a second body cast was—when a second spica cast was applied; about April 28th this second spica cast was removed and this time union had progressed sufficiently to allow him to be up and about, with the aid of crutches and without weight bearing. Within six weeks from April 26th he was allowed to begin some weight bearing. His last check-up examination was on August 16th 1949, at which time Mr. Withers had a one-inch actual shortening of the right leg. He had about 10 degrees limitation of full flexion of the right knee. Extension was normal. Clinically, he had a solid bony union of the fractured femural shaft on the right. X-rays taken at this time revealed a fairly solid bony union with slight lateral bowing at the site of fracture.''

Defendants cite many cases reviewing verdicts by this court and courts in other jurisdictions, and they contend that in the light of comparison this verdict is excessive.

In the recent case of *National Fruit Product Co.* v. *Wagner,* 185 Va. 38, 40, 37 S.E. (2d) 757, the excessiveness of the verdict was the only question before us, and Chief Justice Hudgins, speaking for the court, said:

''An impartial jury properly instructed is the best tribunal to pass upon the amount of damages to be awarded in cases involving personal injury. In *Colonna Shipyard* v. *Dunn,* 151 Va. 740, 766, 145 S.E. 342, 350, we said: 'This subject has been so frequently and fully discussed in various decisions of the appellate court of this State there seems little need for a repetition of the doctrine already announced in relation to it. The settled rule is that as there is no legal measure of damages in cases involving personal injuries, the verdict of the jury in such cases cannot be set aside as excessive unless it is made to appear that the jury has been actuated by prejudice, partiality or corruption, or that they have been misled by some mistaken view of the merits of the case.' See *Safety Motor Transit Corp.* v. *Cunningham,* 161 Va. 356, 171 S.E. 432.

''There is no suggestion in the record that the jury were

prejudiced for or against either party, or that the jury were 'misled by some mistaken view of the merits.'

"Mr. Justice Holt, in *Aronovitch* v. *Ayres,* 169 Va. 308, 326, 193 S.E. 524, after comparing the size of the verdicts in many cases involving personal injuries, said: 'The verdict, large or small, must stand unless it is manifestly out of line and shocks our sense of justice.' "

This verdict does not "shock our sense of justice", and we cannot disturb it.

It follows that we find no reversible error in the trial of this case and the judgment must be affirmed.

*Affirmed.*