**Gladys C. MILLS and Giles E. Mills, Plaintiffs,**

**Ray Anthony Allen and Willie Ray Allen, Intervening Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. 110–67.**

United States District Court
District of Columbia.
March 27, 1969.

Jacob Sheeskin, Washington, D. C., for plaintiffs.

Robert Cadeaux, Washington, D. C., for intervening plaintiffs.

Arnold T. Aikens, Asst. U. S. Atty. for District of Columbia, for defendant.

## OPINION

HOLTZOFF, District Judge.

This is an action for personal injuries against the United States under the Federal Tort Claims Act. The plaintiff was a passenger on a bus owned and operated by the United States Army in line of duty. The bus ran into a moving train. Several passengers on the bus, of whom the plaintiff was one, were injured and the plaintiff sued for damages for injuries so sustained.

The strange and unusual accident involved in this case happened on August 1, 1966, in Virginia a few miles from the District of Columbia line. The public school system of the District of Columbia contained a subordinate agency known as the Urban Service Corps. This agency operated a program known under the grandiloquent name of "Widening Horizons". Speaking in plain language and prosaic style, this program was intended to acquaint pupils of public high schools and public junior high schools in the District of Columbia with possibilities of future employment and careers. Among other things, this program arranged for trips, including some to military installations. In respect to the latter the Department of the Army of the United States cooperated with the Urban Service Corps by furnishing bus transportation to the pupils and to the supervisors. On this occasion a trip had been arranged to the United States Marine Base at Quantico, Virginia.

There were several buses that proceeded from Washington to Quantico in a convoy. The plaintiff, Gladys C. Mills, was a supervisor under the Urban Service Corps and had charge of the children who were passengers on one of the buses. Although she was a volunteer worker she had an official status for the time being as though she were receiving a salary and was on the Government payroll. The convoy arrived at Quantico and after the completion of a program that had been arranged by the Marine Corps, it started to return to Washington.

The bus in question reached a railroad crossing several miles from the District of Columbia line. The bus driver, who was a non-commissioned officer of the Army, saw flashing warning lights, a sign and a train moving slowly on the railroad tracks across the intersection. He started to slow down and to bring the bus to a stop. Unfortunately his brakes did not respond, but completely collapsed. He testified that when he pressed the brakes, he "got sponge rubber". He saw that disaster was ahead. He tried to stop the bus by the use of the emergency brake, but to no avail. The testimony showed that the emergency brake would not stop the moving bus unless it was proceeding at the rate of not more than twenty miles an hour. He tried to gear the bus down and while he was successful in slowing down its rate of progress he could not stop the vehicle. He stuck to his post and made every possible effort to avoid an accident. The bus struck an automobile immediately ahead that had stopped at the railroad crossing, caused it to swerve to the left and then proceeded into another car and finally struck the train. It then came to a stop.

■ The first question to be determined is what substantive law governs the disposition of this case. The Federal Tort Claims Act, 28 U.S.C. § 1346, provides that such cases shall be decided "in accordance with the law of the place where the act or omission occurred". In other words, the substantive law of the place where the injuries were sustained governs the determination of the plaintiff's rights and the defendant's liability. The Supreme Court has held that the entire substantive law of the state where the act or omission occurred governs, including the principles of the conflicts of laws that are applicable in the jurisdiction where the accident took place, Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492.

■ The conflict of laws rule applicable in Virginia is that the subject of

liability in a tort action is governed by the law of the State where the accident occurred, Atlantic Coast Line Railroad Co. v. Withers, 192 Va. 493, 65 S.E.2d 654. Virginia has not followed the modern trend in this field to the effect that instead of always applying the law of the place where the injuries were sustained, the matter of liability should be determined in accordance with the law of the jurisdiction that has a majority of the contacts and the greatest interest in the case irrespective of where the accident happened.[1] In view of the Virginia law as to conflicts of laws it is the Virginia substantive law that must govern rather than the law of the District of Columbia.

■■■ The distinction is important because Virginia is one of those jurisdictions that distinguish between ordinary negligence and gross negligence and provides by statute that a person who is transported in any motor vehicle as a guest may not recover damages sustained as a result of ordinary negligence of the driver, but only in case the driver is guilty of gross negligence, Virginia Code 1950 Section 8–646.1. The Government claims that this statute is applicable, that the plaintiff must be treated as a guest passenger and therefore she may not recover unless she establishes gross negligence on the part of a Government employee. The Court disagrees. The obvious intent of the guest statute is to prevent a person who is given a free ride as an accommodation by a friend or acquaintance or even a stranger from doing what many deem to be ungallant, that is, from suing his host for damages in the case of an accident caused in whole or in part by some negligent act on the part of the latter. While the statute is not limited to that situation, this is obviously its underlying philosophy. It is not necessary that the passenger pay a cash fare or that someone pay a cash fare on his behalf in order that the guest statute should not be applicable. As long as the owner and operator of the bus has some interest in the transportation other than merely extending a friendly accommodation to the passenger, that fact is sufficient to preclude the passenger from being treated as a guest passenger under the statute.

■ A representative of the Public Information Service of the Army testified that the Army furnished tours to apprise the public of what the military establishment was doing. This was part of the public information program of the Department of the Army. In other words, there was a joint interest in the enterprise: the school system was desirous of showing the children opportunities for future employment, while the Army was desirous as a matter of public relations to exhibit what the military establishment was doing.

Under the circumstances the passengers on the bus may not be treated as guests, using that term in its statutory meaning. They were in the same position as though they had paid a cash fare. For example, it would be intolerable to suggest that if a Government department operates a trip for the purpose of showing to citizens some of its activities, those who take advantage of the opportunity have no right to recover damages for injuries sustained as a result of the negligence of Government personnel. The Court, therefore, holds that the guest passenger statute of Virginia is not a good defense to this action and that this plaintiff is entitled to maintain this action on the basis that she may recover damages if she proves that her injuries were sustained as a result of ordinary negligence of some Government employee.

■■ It is well established that if it appears that an accident has happened as a result of collapse or malfunctioning of the brakes, the principle of *res ipsa loquitur* is applicable; Virginia Transit v. Durham, 190 Va. 979, 59 S.E. 2d 58, Currie v. United States, 312 F.2d

1. The District of Columbia follows the new trend. Williams v. Rawlings Truck Line, 123 U.S.App.D.C. 121, 125, 357 F.2d 581.

Dovell v. Arundel Supply Corp., 124 U.S. App.D.C. 89, 90, 361 F.2d 543 (dictum).

1 (4th Cir.), Sothoron v. West, 180 Md. 539, 26 A.2d 16, Phillips v. Delta Motor Lines, 235 Miss. 1, 108 So.2d 409. In other words, the mere fact that the brakes collapsed and failed is sufficient to justify an inference of negligence on the part of the owner or operator of the vehicle and the burden of going forward with the evidence then shifts to the defendant. The defendant in this case assumed that burden.

 It appears that the bus was equipped with air brakes as well as an emergency brake. There is uncontradicted testimony that the brakes were thoroughly inspected and overhauled, together with the rest of the mechanism, at stated intervals and that the latest inspection took place only eight days before the accident. There was also testimony that the brakes were inspected daily before the vehicle was permitted to start on its assigned trips, and that this inspection was had in this instance. The evidence shows that the brakes passed all of these inspections. There was also testimony to the effect that the brakes operated and responded properly throughout the trip from Washington to Quantico and throughout the return trip until the bus approached the railroad intersection, when the brakes suddenly failed to operate. There was expert testimony to the effect that the brakes were inspected immediately after the accident, but that due to the impact, the valves and the air lines had been damaged and the compressor broken and that consequently that it was impossible to determine what had caused the accident; that is, what had caused the brakes to collapse and fail.

The Court reaches the conclusion that there is not sufficient basis for any finding of negligence on the part of the Government. On the contrary, the Government has affirmatively established that the brakes were properly inspected and that they had been operating properly until immediately before the accident. This instance is one of those few cases of a motor vehicle accident being caused by mechanical failure. The Court has ob-

served that the vast majority of accidents are caused by human failure on the part of one or more drivers.

Under the circumstances, the Court concludes that the Government is not liable under the Federal Tort Claims Act and will render judgment dismissing the complaint on the merits.

A transcript of this oral opinion will constitute the findings of fact and conclusions of law.

Counsel may submit a proposed judgment.