**ALABAMA GREAT SOUTHERN RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**ALLIED CHEMICAL CORPORATION et al., Defendants-Appellees.**

No. 71-3534.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1972.

Tally D. Riddell, Quitman, Miss., Lewis T. Booker, Robert F. Brooks, Richmond, Va., for plaintiff-appellant.

Sherwood W. Wise, Thomas G. Lilly, W. F. Goodman, Jr., Junior O'Mara, Jackson, Miss., for defendants-appellees.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

THORNBERRY, Circuit Judge:

This diversity case presents troublesome questions of state law. On January 25, 1969, a number of cars of one of appellant-Railroad's trains derailed in Laurel, Mississippi, allegedly because of the collapse of one of the wheels on a "jumbo tank car." The derailment caused the tank car and others like it filled with propane gas to explode and burn. A number of people were killed or injured and there was extensive property damage. Appellant immediately began settling claims, thinking itself to be technically liable under Mississippi law.[1] Appellant then filed this suit for $10,000,000 April 23, 1969, alleging common law negligence, strict product liability, and breach of warranty in the design and manufacture of the tank car and the wheel. Appellees are the manufacturer of the wheel (Armco), the builder of the tank car (General American Transportation), and the owner of the tank car (Allied Chemical).

The derailment occurred in Mississippi, the injured parties resided in Mississippi, the damaged property had its situs in Mississippi, and seemingly all other significant incidents of this action were centered in Mississippi. The suit was brought, however, in the Eastern District of Virginia. Subsequently, it was transferred to the Southern District of Mississippi for the convenience of the parties and witnesses pursuant to 28 U.S.C.A. § 1404(a).[2] After extensive discovery and taking of depositions, appellees moved for summary judgment on various grounds, including the six year Mississippi statute of limitations, Miss. Code Ann. § 722.[3]

The district court granted the motion in favor of all defendants, concluding that the suit was untimely. The court specifically deferred "ruling on any other aspects of the motions for summary judgment now pending before the Court." The court apparently based its holding on the Mississippi rule that a cause of action in tort generally accrues at the time of the negligent or otherwise wrongful act or omission rather than when the act or omission is discovered or causes harm. Since the car and wheel were sold in 1962, and were initially turned over by Allied to appellant

---

1. Miss.Code Ann. § 1741.

2. § 1404. Change of venue.
    (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

3. § 722. Actions to be brought in six years.

    All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.

in 1962, the court concluded that the six year statute began to run in 1962 and thus barred appellant's suit filed in 1969.

This appeal presents two difficult questions: first, whether Virginia or Mississippi law on limitation of actions applies; and secondly, how the applicable state law affects the outcome of this lawsuit. Appellant contends that under Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), Virginia law applies. Under Virginia law a tort action accrues when injury is sustained rather than when the wrongful act, here the manufacture and design of the defective car and wheel, occurs, Caudill v. Wise Rambler, Inc., 210 Va. 11, 168 S.E.2d 257 (1969). Thus the instant suit filed three months after the derailment would be timely. Appellee replies that whether or not Van Dusen controls, Mississippi law applies.

Van Dusen stands for the proposition that a change of venue pursuant to 28 U.S.C.A. § 1404(a), see note 2, supra, is nothing more than a judicial housekeeping measure for the convenience of the parties and witnesses. Section 1404(a) was not intended to result in a change of law to the prejudice of either party.

> We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.

Van Dusen v. Barrack, supra, at 639, 84 S.Ct. at 821.

In Van Dusen the plaintiffs brought suit in Pennsylvania for damages resulting from a plane crash in Massachusetts. Plaintiffs included personal representatives of the estates of a number of Pennsylvania residents who had died in the mishap. Defendants moved for a change of venue to Massachusetts. Plaintiffs resisted vigorously since they were not qualified to sue under Massachusetts law. The transfer of the case would thus have had the effect of dismissing their suit. The Supreme Court concluded that the case might be transferred but that the move must not result in prejudice to the plaintiffs; Pennsylvania law must control whether the case was to be heard in Massachusetts or Pennsylvania.

Van Dusen thus dictates that the district court should have viewed this case as if it were sitting in Virginia where the suit was filed. Under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Virginia district court would apply the substantive law of the forum state. A state's substantive law includes its conflict of laws rules, Klaxon Company v. Stentor Electric Manufacturing Company, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Consequently, to determine whether to apply the Virginia or the Mississippi statute of limitations, we must look to Virginia conflicts law.

■ In choice of law cases, Virginia sometimes applies its own statute of limitations and sometimes that of the foreign jurisdiction. Virginia considers its limitation law procedural, Owens v. Combustion Engineering Incorporated, 279 F.Supp. 257 (E.D.Va.1967), and thus generally controlling in a Virginia forum.[3A] However, when the right sued upon is created by a foreign statute that contains a "built in" limitation period, as in a wrongful death statute that establishes the right to sue and the time within which suit must be brought, Virginia courts adhere to the foreign limitation statute. See, Sherley v. Lotz, 200 Va. 173, 104 S.E.2d 795 (Va.1958); Norman v. Baldwin, 152 Va. 800, 148 S. E. 831 (Va.1929). The rationale of the Virginia courts for this approach is that the "built in" limitation provision affects the right asserted as well as the remedy, while a foreign jurisdiction's general statute of limitations affects

---

3A. Compare Kershaw v. Sterling Drug, Inc., 5th Cir. 1969, 415 P.2d 1009.

only the remedy and is thus procedural and not applicable in a case tried in Virginia. *See* Sherley v. Lotz; Norman v. Baldwin, *supra.*

Regrettably, Virginia jurisprudence does not definitively resolve our choice of law problem. Since the instant case is grounded on common law, not a statutory basis, *Sherley* and *Norman, supra,* are not controlling. We think, however, that they provide substantial guidance. The criterion used in both cases in determining whether to apply the Virginia limitation period or that of the foreign jurisdiction was whether the foreign statute affected the right at issue or only the remedy. In the instant case, the foreign jurisdiction's statute, Mississippi's, clearly bars not only the remedy but the right itself. Miss. Code Ann. § 743.

> § 743. Completion of limitation extinguishes right.
>
> The completion of the period of limitation herein prescribed to bar any action, shall defeat and extinguish the right as well as the remedy; . . ..

*See* Hawkins v. Southern Pipe and Supply Company, 259 So.2d 696 (Miss. 1972).

■■■ We conclude, therefore, that even though the Mississippi period of limitation is not part of a statute creating the right sued upon, Virginia courts would apply it in the instant case since it bars the right of action and not merely the remedy. The approach we predict the Virginia courts would take is that set forth in Restatement (Second) of Conflict of Laws § 143:

> § 143. Foreign statute of limitations barring the right.
>
> An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy.

*See generally* Ramsay v. Boeing Company, 432 F.2d 592 (5th Cir. 1970). Mississippi is the "state of the otherwise applicable law," since Virginia applies the law of the place of the wrong in tort cases. Atlantic Coast Line Railroad v. Withers, 192 Va. 493, 65 S.E.2d 654 (Va.1951). Having decided that Virginia would look to Mississippi law we must now determine what the Mississippi law is.

A number of Mississippi cases hold that a cause of action in tort accrues at the time of the wrongdoing or "time of delivery" rather than when the wrong is discovered or causes harm, *e. g.,* M. T. Reed Const. Co. v. Jackson Plating Co., 222 So.2d 838 (Miss.1969); Wilder v. St. Joseph Hospital, 225 Miss. 42, 82 So.2d 651 (Miss.1955); Johnson v. Crisler, 156 Miss. 266, 125 So. 724 (Miss. 1930). Appellees urge that these cases establish an ironclad "time of delivery" rule barring this suit that was filed more than six years after the sale of the wheel and tank car alleged to be defective. Appellant responds that the cited cases are distinguishable from the case at hand and should be limited to their facts.

Again, as with the question of whether a Virginia court would apply its own statute of limitations or look to Mississippi's, we do not have clear guidance from the state court decisions. Mississippi's courts have apparently never been called upon to interpret the state's statute of limitations in a products liability case. In *Wilder, supra,* the Mississippi Supreme Court held that the statute of limitations barred a medical malpractice suit filed in 1954 seeking recovery for negligence that occurred during a 1939 operation. The plaintiff alleged that sponges and other medical paraphernalia had been left inside her after the incision had been sewed up. The court, after stating that in malpractice cases the majority rule is that a cause of action accrues at the time of the operation, said:

> In view of the allegation of continuous pain, etc., from the date of the operation, it is obvious that the plaintiff, in the exercise of ordinary care, should have discovered her alleged condition within six years.

*Wilder, supra,* at 653.

Thus, in *Wilder* the supreme court seemed to establish a "know or ought to know" rule, i. e., that if a plaintiff knew or ought to have known of his right within the limitation period but failed to assert it in court he was barred. *Wilder* and its predecessors appeared to leave open the possibility that if, conversely, a party did not know or could not have known of his right of action he could assert it more than six years after the wrong was perpetrated. However, in the most recent Mississippi case, M. T. Reed Const. Co. v. Jackson Plating Co., 222 So.2d 838 (Miss.1959), the supreme court, while refusing to apply the "know or ought to know" rule in a building construction negligence case, went on to comment that in *Wilder* it had refused to apply it to malpractice cases. This comment injects some confusion into the area since such a refusal is not apparent in the *Wilder* opinion. In *M. T. Reed* the plaintiff sought recovery for common law negligence in the construction of a roof that collapsed just after the expiration of the six year limitation period. The roof began to fail five years after it was built, *M. T. Reed* at 839, but the plaintiff contended that he had not been damaged until later when the roof leaked permitting water to drip into the interior of the building. Therefore, he argued, no cause of action accrued until this damage occurred. The supreme court, citing *Wilder,* held the suit barred, concluding that the right of action accrued when the faulty roof was constructed, not when damage occurred. Predictably, appellee urges that this holding in a case where the "know or ought to know" rule was specifically raised means that the rule is dead in Mississippi in all types of cases. We disagree.

After a careful reading of the Mississippi precedents, we conclude that the case before us is distinguishable from *M. T. Reed.* First, in *M. T. Reed* and *Wilder* the supreme court specifically noted that the plaintiffs knew or should have known of the defect before the limitation period had run. The court held in both cases that the limitation statute commenced to run when the wrong was committed rather than when it was discovered, but we do not think the "knew or should have known" language of the opinions was intended as meaningless surplusage, which it would be if, as appellee argues, Mississippi is wedded to an immutable time of delivery or time of wrongdoing rule. In contrast to the facts in *Wilder* and *M. T. Reed* there is no suggestion in the record before us that appellant knew or should have known of the defect in the wheel prior to the derailment.[3B]

Secondly, the court said in *M. T. Reed* at 840:

> Likewise, of controlling importance is the reason for and policy of repose established by the legislature, namely, "to protect parties against stale demands, which, in many cases, might be more easily established after a great lapse of time, than if they had been immediately prosecuted." Cook v. Lindsey, 34 Miss. 451, 455 (1857).

Certainly, this policy would not be furthered by barring the instant suit that was brought three months after the derailment. The suit before us is by no means a stale claim.

Finally, since Mississippi courts are not bound by firm precedent in this case, we believe they would, as a matter of policy, decide that appellant's right to sue did not quicken until the derailment. In State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966), Mississippi adopted the policy of strict tort liability for defective products that is set forth in Restatement (Second) of Torts § 402A. In light of *State Stove,* which reflects a strong inclination to protect those injured by defective prod-

---

**3B.** We do not reach the question whether appellant in fact knew or should have known of the defect prior to the derailment because that issue was not before the court below on the motion for summary judgment, and it is not before us on this appeal.

ucts, we do not think a Mississippi court would hold that strict liability of sellers of defective products is always restricted to the first six years of the product's life no matter what its nature and normal life expectancy. This would be the result if we decide, as urged by appellees, that *M. T. Reed* means that in a tort suit, no matter what the facts are, the Mississippi statute of limitations starts to run when the negligent or otherwise wrongful act or omission occurs.[4]

The harshness of the rule urged by appellees, and thus its incompatibility with the policy underlying *State Stove*, can be demonstrated by a slight variation of the facts actually before us. In our case the many persons injured and the survivors of those killed by the explosion have recovered damages from appellant because of a state statute that appellant believes required it to pay whether it was at fault or not. This suit is, therefore, by the Railroad for indemnity, *inter alia*, and thus is not quite as appealing on its face as a suit against these defendants by the widows, orphans, and maimed citizens of Laurel. However, what if this explosion had been just as devastating but had not involved the deep pocket Railroad but instead a propane truck owned by a judgment proof small businessman. If the injured citizens of Laurel sued the manufacturer of the truck alleging that a defect in its structure caused the explosion, we simply cannot conceive of the Mississippi courts turning them away because the truck had been built more than six years earlier. Under the interpretation of *M. T. Reed* urged by appellees, they would be turned away. Believing this result flies in the face of *State Stove* as well as elementary concepts of justice, we conclude that a Mississippi court would hold that appellant's cause of action accrued at the time of the derailment.

We realize that manufacturers should not be held liable indefinitely for defects in every article they introduce into the stream of commerce. We decide here only that Mississippi courts would not use so blunt an instrument as the statute of limitations to shield them in a products liability case in which the injured party has no hint of the defect in the product until after the limitation period has run.[5] On the basis of the record before us, we conclude appellant's cause of action did not accrue until the derailment in 1969; this suit was thus timely filed. The judgment of the district court is reversed and the case is remanded for further proceedings.[6]

Reversed.

---

4. Appellees agree that Mississippi has not yet had occasion to apply its statute of limitations in a products liability case. They point out, however, that other states, which like Mississippi generally adhere to a time of wrongdoing rule, have. Jarrell v. Samsonite Corporation, 12 N.C. App. 673, 184 S.E.2d 376 (1972); Hargrove v. Newsome, 470 S.W.2d 348 (Tenn.1971); North Carolina v. Cessna Aircraft Corporation, 176 S.E.2d 796 (N.C.1970). These cases from other jurisdictions might be helpful in making our *Erie* guess at Mississippi law a more informed one except for one thing. Neither North Carolina or Tennessee, at least at the time these decisions were rendered, had adopted the Restatement's approach to strict products liability. The cases are thus distinguishable in that neither jurisdiction has evidenced the strong commitment that Mississippi has to recovery by those injured by faulty products.

5. It would be proper for the age of the wheel and of the car to be taken into consideration by the district court in deciding, *inter alia*, whether they broke down as a result of wear and tear rather than defective design or manufacture and whether the manufacturer was negligent given the existing technology at the time of manufacture.

6. Appellee urges that we rule not only on the limitation question but also on all grounds included in their motion for summary judgment. Although we realize there are situations in which an appellate court should, in the interest of judicial efficiency, rule on matters not considered by the court below, this is not one of them. The alternate bases supporting the motion are somewhat complex. We decline to rule on them with the benefit of only an appellate brief, albeit an excellent one, and a few minutes of oral argument.