W. G. H. WEATHERMAN, ADMINISTRATOR OF THE ESTATE OF ARNOLD CLEVE-
LAND WEATHERMAN, v. ERNESTINE STEELMAN WEATHERMAN,
ADMINISTRATRIX OF THE ESTATE OF PAUL G. WEATHERMAN.

(Filed 19 April, 1967.)

**1. Automobiles § 49—**

Evidence that intestate continued to ride with an intoxicated and reck-
less driver for a number of hours although intestate had opportunity to
alight from the car with safety at a filling station after the recklessness
of the driver had become abundantly apparent, *held* sufficient to raise the
issue of intestate's contributory negligence for the determination of the
jury in plaintiff's action to recover for intestate's death in an accident re-
sulting from the driver's recklessness.

**2. Evidence § 26—**

In an action based on the recklessness of the driver of an automobile,
it is improper for counsel to ask a witness whether the witness had
knowledge of previous convictions of the driver for violations of the motor
vehicle statutes, since the questions put before the jury information or
claims in violation of the best evidence rule.

**3. Evidence § 28—**

Answers of a witness to questions as to whether the witness had heard
about prior convictions of a driver for violations of the motor vehicle
statutes are incompetent as hearsay.

**4. Evidence § 15—**

Intestate was killed while riding as a passenger in an automobile driven
by his brother. *Held:* Testimony of intestate's aunt tending to show her
knowledge of the driver's reputation for recklessness is incompetent to
show that intestate knew of such reputation when he voluntarily rode as
a passenger in the car driven by his brother.

APPEAL by plaintiff from *Gambill, J.,* at November 7, 1966 Civil
Session of the Superior Court of FORSYTH County.

The plaintiff's intestate, Arnold Weatherman, age 19, was rid-
ing with his brother, Paul, age 21, in Paul's 1964 Plymouth on May
19, 1965 about 11:25 p.m. Robert Thomas was also in the car —
Paul was driving.

Arnold and Paul had been riding around together most of the
evening and had stopped at several places.

Herman Foster testified that he was driving a 1964 Ford west on
I-40 when Paul's car struck him from behind. It was struck so hard
that the front seat was torn out, and it went some 500 feet from the
point of impact before stopping. Robert Lee Anderson testified that
Paul's car started to pass him at a speed of 80 to 90 miles per hour,
that he believed a tire blew out on Paul's car as it was passing him,
that it then ran into the rear of the Foster car, careened off, crossed

the median and struck a Mack truck which was going east on the other section of I-40.

All three of the boys in the Plymouth were killed instantly.

Arnold's administrator brought suit against Paul's administrator to recover for the death of the former. At the trial the defendant admitted Paul's negligence and stipulated that the jury should answer the first issue of negligence "Yes." The jury answered the issue of contributory negligence in favor of the defendant. Upon judgment signed, the plaintiff appealed.

*Roberts, Frye & Booth, by Leslie G. Frye and Parks Roberts, Attorneys for the plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by Grady Barnhill, Jr., and David A. Irvin; Allan R. Gitter, Attorneys for defendant appellees.*

PLESS, J. There was sufficient competent evidence to sustain the jury's finding of contributory negligence as to the plaintiff's intestate.

Summarized, the evidence tended to show that Paul had been with Arnold for several hours prior to the wreck, during which time Paul was drinking, fussing, and attempting to start a fight. He had drawn a pistol on a crowd of boys, and in going from one drive-in to another, he was driving from 60 to 65 miles per hour in a 45-mile zone. Shortly before the fatal accident, Frank Edwards had been riding with Paul, and he testified that Paul was running from 70 to 90 miles an hour as he was making a right turn, that the car slid sideways and skidded into another turn. Edwards then asked Paul to take him back to Garner's Esso Station, that he didn't like the way Paul was driving. At the gas station Edwards got out of the car, but Arnold remained in it.

Paul's car had four forward speeds, a four-barrel carburetor, 426 cubic inch engine with a tachometer. Paul told the witness Bobbitt in Arnold's presence that it had a cam and lifters to make it run faster, and that it would run 120 to 130 miles per hour at the Stratford Ramp. He also told Bobbitt that he would like to race him some time.

Later, at the Triangle Drive-In, Paul jumped out of his car, waved a pistol in the air, and asked the boys there if they were looking for trouble, that he didn't care whether he lived or died. Arnold told B. S. Weinstein that Paul was drinking, and Weinstein testified that Paul didn't walk or talk normal. The three boys got back in the car, drove off, and the accident occurred just a mile from this place and two or three minutes later.

The following statement from *Bogen v. Bogen,* 220 N.C. 648, 18 S.E. 2d 162, is pertinent:

". . . one who voluntarily places himself in a position of peril known to him fails to exercise ordinary care for his own safety and thereby commits an act of continuing negligence which will bar any right of recovery for injuries resulting from such peril.

"A guest, entering an automobile, assumes the dangers incident to the known incompetency, inexperience and driving habits of the driver. 4 Blashfield, 331, and cases cited in notes. It is the general rule that a guest or passenger in an automobile takes the host with his defects of skill and judgment and his known habits and eccentricities in driving. 4 Blashfield, 197.

" 'When a guest enters an automobile with the knowledge that the driver is incompetent or inexperienced . . . he takes the chances of an accident, and, in case an accident occurs arising from such known incompetency, inexperience, or recklessness, he cannot recover against the driver; for in such case he assumes the risk of the accident by inciting the driver's predisposition to operate the vehicle in an irresponsible manner.' 4 Blashfield, 333, and cases cited. So, if a guest, with knowledge of the defective condition of the car and appreciation of the hazards involved, voluntarily assents to ride therein, he will be precluded from recovery for injuries in an accident resulting from the defects of which he has then been cognizant. 4 Blashfield, 336; *Cline v. Prunty,* 152 S.E. 201 (W. Va.); *Pawhowski v. Eskafski,* 244 N.W. 611 (Wis.); *Knipfer v. Shaw,* 246 N.W. 328 (Wis.).

"The guest cannot acquiesce in negligent driving and retain a right to recover against the driver for resulting injuries therefrom. 4 Blashfield, 194-195; *Lorance v. Smith,* 138 So. 871 (La.); *Royer v. Saecker,* 234 N.W. 742 (Wis.). The basis for charging the passenger with negligence in such case is simply that of his own personal negligence in thus relying entirely and blindly upon the driver's care. *Russel v. Bayne,* 163 S.E. 290 (Ga.); *Lambert v. Railway Co.,* 134 N.E. 340 (Mass.); *Heyde v. Patten,* 39 S.W. (2d) 813."

The *Bogen* case was decided in 1941, and since that time there have been many references to it and some revisions and qualifications; however, the sections quoted above have not been altered in any manner that would affect their application here.

Under these authorities we hold that the evidence stated above is sufficient to go to the jury upon the question of contributory negligence. However, we are of the opinion that the plaintiff's case was

substantially damaged by the admission of the following incompetent evidence.

Upon the theory that Paul and Arnold were brothers who were very close to each other and "ran around together" almost every evening, the Court admitted testimony from their aunt, Mrs. Shirley Ann Hise, upon the contention of the defendant that if the aunt knew about the record of Paul that Arnold would also. She was permitted to testify over plaintiff's objection as follows:

"Q. You knew that in March of 1964 he was convicted of reckless driving, didn't you?

MR. FRYE: Well, I object, if your Honor please.

THE COURT: OVERRULED. EXCEPTION No. 116.

A. Yes, I did.

"Q. And you knew that in March of 1964 he was convicted of driving after his license were revoked, didn't you?

MR. FRYE: I object. EXCEPTION No. 117.

A. No. No.

"Q. And you knew that he had been convicted of driving an automobile intoxicated, didn't you?

MR. FRYE: I object.

THE COURT: OVERRULED. EXCEPTION No. 118.

A. I don't remember. I remember that he was charged with reckless driving. I don't remember the other. I would be afraid to say.

"Q. All right. But you do know that in November 1962 he was convicted of driving intoxicated and his licenses were taken, don't you?

MR. FRYE: Objection. She said she didn't have any other knowledge other than reckless driving.

THE COURT: OVERRULED. EXCEPTION No. 119.

A. I'd be afraid to say.

"Q. Well, you had heard about it, hadn't you?

A. Hearing and knowing is two different things.

THE COURT: Just answer his question.

Q. You had heard about this?

A. I suppose so. He was my nephew, I knew his license were taken away from him.

"Q. You know that he got caught driving after his license were revoked?

MR. FRYE: I object.

THE COURT: OVERRULED. EXCEPTION No. 120.

A. (No answer)

"I had not heard about that. I know that he was caught

with reckless driving. That I know for sure. The other I will not say because I am not sure.

"Q. And at the time he was caught for reckless driving, he was traveling at a high rate of speed, wasn't he?

MR. FRYE: I object, if your Honor please.

THE COURT: OVERRULED. EXCEPTION No. 121.

A. I suppose so.

"Q. As a matter of fact, the speed was 90 miles an hour, wasn't it?

MR. FRYE: Now, I object.

A. I do not know.

THE COURT: OVERRULED. EXCEPTION No. 122."

This was prejudicial upon several theories. The questions themselves were incompetent, and even though objections to them had been sustained, they put before the jury information, or claims, about Paul's record that could not have been proven in that manner. Also, the questions and the answers violated the hearsay evidence rule in that the questions were not so framed as to show actual knowledge by Mrs. Hise of the facts sought to be elicited. Further, the fact that Mrs. Hise knew or had heard of the incidents would not necessarily imply that Arnold also had that information.

The questions and answers are incompetent and highly prejudicial. The plaintiff's exceptions are well taken, and he is entitled to a

New trial.